926

A. D. Slavitt, of South Norwalk, Conn., for receiver.

William H. Cable, of Danbury, Conn., for Concordia Soc. of Danbury, second mortgagee.

Abraham Weissman and Benjamin Slade, both of New Haven, Conn., for creditors.

Ives & Keating, of Danbury, Conn., for Town of Danbury, Tax Department.

HINCKS, District Judge.

This matter came before the court originally upon a creditor's bill in equity, and a

receiver was appointed upon the consent of the corporate defendant. There is nothing in the bill to indicate that the plaintiff had, or claimed to have, any lien upon the corporate assets originating more than four months prior to the intervention of bankruptcy.

During the progress of the receivership it became evident that it was feasible neither to continue the active operation of the business nor to reorganize. An offer to purchase at private sale was made and denied as not being in conformity with Act March 3, 1893, § 1 (28 USCA § 847). (In this ruling, I am afraid that court and counsel alike overlooked the amendment of June 19, 1934, to the statute cited [28 USCA § 847].) Thereafter, on September 5th, an order of public sale was made requiring that the receiver sell the entire estate as a going concern or the land, buildings, and machinery in a separate parcel, and the other assets as a whole, or in such lots as may be otherwise expedient. Thereafter, the second mortgagee intervened and filed a cross-complaint of foreclosure by sale, its cross-complaint showing that its mortgage purported to cover certain of the machinery. Thereafter, without an interlocutory decree or any proceedings to ascertain the amount or the validity of the second mortgage, or its extent with respect to the machinery belonging to the estate, the receiver proceeded with the public sale, which was had upon the premises, on September 29th. Then and there he first offered the land, buildings, and machinery, subject to the first mortgage of $15,000 and to taxes. This item was knocked down to the second mortgagee for $8,000, a price substantially less than the face amount of its mortgage. He then offered merchandise and materials, which were knocked down for $5,700. He then offered in a combined lot, the two lots first offered as aforesaid, announcing that the purchase price on the combined offer would be allocated, as suggested by the previous bids, in the ratio of 80 to 57—80 parts of the aggregate for application on the second mortgage debt, and 57 parts of the aggregate to the estate. The combined offering resulted in a highest bid of $15,700. At the hearing on confirmation, the receiver and certain creditors objected to the confirmation of the highest offer on the ground that the price was inadequate. At this hearing charges were made that competitive bidding had been wrongfully stifled. The hearing on confirmation was accordingly continued to permit evidence to be submitted on the stifling of competition. Evidence was taken at a later date and the matter further continued to allow counsel for the highest bidder at the public sale to submit a brief in support of confirmation and the receiver to file a brief in opposition.

After the public sale and pending the proceedings on confirmation, certain creditors filed an involuntary petition in bankruptcy a few days before the expiration of the four months' period following the institution of the proceedings in equity. Neither the bankrupt nor any creditors appeared in opposition to the bankruptcy petition, and accordingly an adjudication has since been entered.

■ The foregoing situation presents two questions: (1) Has this court in equity any power now that an adjudication in bankruptcy has intervened to confirm the sale heretofore made; and (2) if the court has power, should the sale be confirmed?

From the foregoing facts it will be observed that the pending case does not fall within the holding of Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 467, 75 L. Ed. 1060; for here the original proceeding in equity, unlike that involved in the Straton Case, was not one adapted for the preservation and enforcement of a lien antedating bankruptcy by more than four months. The plaintiff here is a simple creditor who, by a creditor's bill with his debtor's consent, sought to impose upon the debtor's assets a lien theretofore having no existence. Consequently, this case falls rather within the dictum of the Straton Case that "as the lien created by a judgment entered within four months is avoided, the court of bankruptcy has jurisdiction to administer the property regardless of the lien and will restrain the prosecution of an action to enforce it." It follows that after the adjudication in bankruptcy here, this court in equity was without jurisdiction to administer the res which passed into the custody, at least constructively, of the court of bankruptcy. It is unnecessary for present purposes to decide whether the power of equity to deal with the res terminated upon the filing of the involuntary petition, because here the petition was followed by an adjudication before the court of equity did anything in derogation of the jurisdiction of the court of bankruptcy.

To be sure, the court of equity, through its receiver, has continued in the actual custody of the corporate assets notwithstanding the passage of jurisdiction to the court of bankruptcy. But in this respect, the court of equity has been acting in aid of the bankruptcy jurisdiction by holding the assets intact for the administration in bankruptcy, and in readiness to transmit the assets as soon as the

court of bankruptcy is ready to receive them. Certainly there is nothing improper nor inconsistent in such activity by the court of equity. In re Gochenour (C. C. A.) 64 F.(2d) 500. If, however, the court of equity, by confirming the sale, should attempt to put the corporate assets beyond the reach of bankruptcy jurisdiction, clearly it would be acting in derogation thereof and not as an aid thereto. Nor is confirmation required to protect the claimed equity of the "purchasers" at the judicial sale, for the purchasers have no equity until the sale is confirmed. This is the rule in bankruptcy, In re Kelin's Rapid Shoe Repair Co. (C. C. A.) 54 F.(2d) 495. Also in equity, Layton v. R. I. Hospital Trust Co. (C. C. A.) 205 F. 276; Crowley v. Crowley, 56 App. D. C. 340, 13 F.(2d) 311; Tennessee v. Quintard (C. C. A.) 80 F. 829. I hold, therefore, that this court is now without power to confirm the sale.

■ But were it otherwise and were the situation such that this court still had power to sell, nevertheless the sale heretofore had could not be confirmed, because the terms of sale were inadequate to meet the exigencies of the situation; for, as stated above, after the order of sale was entered and prior to the sale itself, the second mortgagee intervened and filed a bill of foreclosure. To this bill the receiver filed an answer admitting the mortgage debt. But no interlocutory decree was ever sought or obtained judicially ascertaining the amount of the debt, nor were any proceedings whatever had to ascertain the scope of the second mortgage. Nor does the record anywhere disclose whether all of the machinery which the receiver offered for sale in conjunction with the real estate in the first lot offered, as above described, was included within the second mortgage. Notwithstanding, the receiver evidently attempted to conduct the sale as one of foreclosure, and without any authority from the court announced, in connection with the offer of the two lots in combination, as above described, that any excess in the offer above the aggregate of the offers for the lots separately would be arbitrarily prorated in the ratio of 80 to 57, between the second mortgagee and the estate. Furthermore, also without specific authority, he offered the real estate free from the lien of the second mortgage. The record not being in shape to support a foreclosure sale, the unauthorized efforts of the receiver, though doubtless entirely conscientious, to make the sale, ordered before the institution of foreclosure proceedings, conform to the requirements of a foreclosure sale, were inadequate to clothe the proceedings with the requisite validity to inspire competitive bidding. On that account alone, confirmation should be withheld.

It might also be suggested that the entire proceedings were invalid for lack of compliance with the second proviso of 28 USCA § 847 (as amended June 19, 1934). For clearly the appraisal by the *two* appraisers appointed herein, made long before the sale was contemplated, would not satisfy the requirement of this proviso of an appraisal by "three disinterested persons." Such an objection, however, I should hold to lack merit; for I construe the second proviso of the statute, as amended, to apply only in the case of private sales under the authority of the first proviso of the amendment. To construe the second proviso as applicable to public sales made under the authority of the original statute would impose a far more drastic restriction upon sales in equity than upon sales in bankruptcy (11 USCA § 110 (b), and in many cases might create a disastrous deadlock. What would happen if the appraisal required were such that a court of equity could find no one, at public or private sale, to pay two-thirds of the appraised value? Must the property remain in the custody of the court, possibly deteriorating and unproductive, forever? To escape the folly of an affirmative answer to that question, it might be suggested that in such a stalemate the court might order a reappraisal which would doubtless reflect the lack of demand for the property in question. But such a suggested solution stultifies the obvious purpose of the amendment, for Congress evidently intended that sales should be governed by their relation to an appraised valuation—not that the appraised value should be determined by actual offers or the lack of offers.

The absurdity arising from such a construction is obviated if the requirement of the second proviso that "*said sale* shall not be confirmed for less than two-thirds of the appraised value" is referred only to the last preceding *sale* specified in the text, viz., the *private sale* authorized in the first proviso. Thus construed, the amendment contemplated that if an offer at private sale of two-thirds of the appraisal is not forthcoming, the court may proceed to a public sale conducted as prescribed before the enactment of the 1934 amendment.

Accordingly, I hold that the sale here, being a public sale, was not subject to the second proviso of the statute just discussed.

To be sure, I am unable to find on the evidence that the receiver has affirmatively es-

tablished that competitive bidding at the sale was deliberately stifled by the collusion of bidders. However, it does appear that the price obtained, although perhaps not shockingly inadequate, was disappointing, to say the least, and such as to suggest that the confusion resulting from the terms of the sale and the prematurity of a foreclosure sale had chilled the bidding. Altogether the court could not reasonably confirm the sale, even if it had power so to do.

One point only remains for discussion. In order that the scope of my rulings herein may not be misunderstood, I should perhaps point out that jurisdiction still remains in this court, as a court of equity, to assist the second mortgagee in the enforcement of its mortgage, which, by allegation, antedated the bankruptcy by more than four months. Straton v. New, supra. To be sure, the second mortgagee on October 16, 1934, filed its petition for leave to withdraw its foreclosure suit. But, pending the proceedings on confirmation, no order has as yet entered upon this petition. It results that the second mortgagee still stands in this cause as a foreclosing plaintiff, and that this court still has full power to aid the second mortgagee in the preservation and enforcement of any valid lien antedating by more than four months the intervention of bankruptcy. In the exercise of this power, of course, this court of equity, like a state court, must proceed in such a way as not to embarrass or impede the administration in bankruptcy. But subject only to that limitation, its power in the premises appears fully adequate.

In view of the limitations on equity jurisdiction recognized above, it is incumbent upon the receiver herein to move for an order authorizing him to surrender to the proper officers of the court of bankruptcy all the assets of the estate. Notice of this motion, if served upon the second mortgagee, will doubtless compel the second mortgagee definitely to elect whether it will look to this court for the enforcement of its mortgage, or whether, by acquiescing in the surrender to the bankruptcy court of the mortgaged assets, it will begin anew in some other available jurisdiction proceedings for the enforcement of its mortgage lien; for on such an application by the receiver, in the absence of objection from the second mortgagee duly noticed, this court would have no alternative but to order the transfer of the entire res for administration in bankruptcy.

It is therefore ordered that the sale heretofore had be not confirmed.