## HELLER v. LAMAR et al.
### No. 6307.

United States Court of Appeals for the District of Columbia.

Argued Feb. 8, 1935.

Decided April 1, 1935.

George C. Gertman, of Washington, D. C., for appellant.

Milton Strasburger, Frederick G. Umhau, George H. Lamar, Walter C. Balderston, Robert D. Wise, and M. Holmes Howard, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and HITZ and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal by a bidder at a trustee's sale of certain real estate in the city of Washington from a decree in equity rejecting his bid and confirming a sale of the property to other persons.

On September 24, 1929, one John A. Moore, a resident of the District of Columbia, died leaving a widow, five adult children, sundry parcels of real estate, and a will.

By that will he appointed his son John A. Moore, Jr., trustee of certain property, part of which was lot 23 in square 440, in the District of Columbia, which is improved by three stories numbered 1909, 1911, and 1913 Seventh Street NW.

The trustee was directed to sell decedent's property, both real and personal, and after payment of his debts to transfer one-third of the proceeds of the personalty and a sum equal to her commuted dower in the realty to the widow, and to divide the remainder among his children, after deducting advances made to each.

A bill in equity having been filed by one of the daughters praying removal of the trustee, and that the court should administer the trust through substituted trustees, Mr. Moore, Jr., resigned as trustee and two members of the bar were appointed in his stead, under a provision that no real estate should be sold without a previous order of court.

After much futile negotiation looking to the payment of decedent's debts and retention of the property in the family, the trustees were directed to sell the three pieces of real estate at public auction.

At that sale the appellant bid $15,200 for the store numbered 1913 Seventh street, which was knocked down to him and his offer submitted to the court by one of the trustees for approval and ratification, together with bids from other parties for the other two stores.

On the same day the other trustee filed a report recommending that the bids be rejected, and submitting in lieu thereof an agreement by the widow and four of the children whereby the latter would buy the three stores for an aggregate of $500 more than the total prices bid at the auction, and convey 1909 Seventh street to the widow in lieu of her claims in the estate.

This offer was followed by objections from three of the children to the bids at auction, and the affidavits of two real estate

brokers that 1913 Seventh street was worth $25,000 instead of the $15,200 bid. The court, after consideration, rejected all three of the bids at the auction and directed the sale to the four children upon the agreement submitted.

From that decree appellant alone of the three bidders brings this appeal, wherein he contends that judicial auction sales should stand in the absence of a substantial showing of some shocking inadequacy of price, unfair dealing by the purchaser, or surprise of those interested in the property.

And in support of his contention he cites, among other authorities, Graffam v. Burgess, 117 U. S. 180, 191, 6 S. Ct. 686, 29 L. Ed. 839, and Pewabic Mining Co. v. Mason, 145 U. S. 349, 12 S. Ct. 887, 36 L. Ed. 732, where the general rule is stated in a manner lending support to his position.

But in the case before us we have a testator appointing his own single trustee to sell his property at the best price obtainable for the benefit of the natural objects of his bounty; we have the court substituting for that trustee two appointees of its own to administer the trust, who disagree in its administration; and we have a manifest desire of those beneficially interested to buy the property themselves, though after a procrastination in agreement unfortunately familiar in such matters:

We have an auction by order of the court, conducted by both trustees, though very reluctantly by one, who appears to have regarded the auction as a formal sounding of the market rather than a sale of the property. And whatever criticism may be due such an attitude, if that view of the proceeding was shared by his client (one of the beneficiaries), it may well have resulted in the failure of the cestuis que trustent to bid at the auction.

The result was a report of the appellant's bid to the court with one trustee recommending its acceptance, and the other its rejection.

This was followed by the agreement of the beneficiaries for the purchase and distribution of the property among themselves, which bids fair not only to accomplish the purpose of the testator six years after his death, but to terminate the protracted and expensive litigation.

As against these considerations, the appellant shows no peculiar damage, beyond alleging that he has made the deposit required and is ready to complete the sale, which he says was properly conducted, and where his bid was a fair one.

But we are of opinion that the history and circumstances of the transaction presented a question for the discretion of the chancellor, and that his decision thereof should not be set aside except for a clear abuse of his power, which certainly does not appear in this case. Rowland v. Munck, 15 App. D. C. 403, 406; Parsons v. Little, 28 App. D. C. 218, 227.

As said in Auerbach v. Wolf, 22 App. D. C. 538, 541, and again in Everett v. Forst, 50 App. D. C. 215, 218, 269 F. 867: "Whether the reported offer by the appellant should be accepted or not, rested largely in the discretion of the court below directing the sale of the property, and who was, in legal contemplation, the vendor of the property. The discretion of the court below over the subject of the sale, should not be controlled by an appellate power, unless it be made apparent that the discretion has been abused to the actual prejudice of the party complaining. The general rule is, doubtless, that the sale will not be set aside or its ratification refused for mere inadequacy of price, unless the court believe that such inadequacy was the result of fraud, surprise, mistake, or unfairness in the sale. Cunningham v. Schley, 6 Gill [ (Md.) 207] 208; Cohen v. Wagner, 6 Gill [ (Md.) 236] 251. In this case, there is no suggestion of fraud, mistake, or unfairness in making the sale. But the settled principle is that in chancery sales, the contract of sale, made between the court as the vendor of the property, through the agency of a trustee, and the purchaser, is never regarded as consummated until it has received the sanction and ratification of the court. Wagner v. Cohen, 6 Gill [Md.] 97, 46 Am. Dec. 660. And in determining the question whether the sale shall be ratified or rejected as reported, any circumstances showing that the sale as proposed would be injurious to the parties concerned, or that a better sale might reasonably and probably have been made, will be regarded as sufficient to induce the court to refuse ratification."

Finally, as we said in Bulloch v. Fisher, 58 App. D. C. 165, 26 F.(2d) 537, 538: "In the matter of judicial sales, it is well settled that the court assumes the character of a vendor, even though his orders may be carried out through a receiver. In Morrison v. Burnette (C. C. A.) 154 F. 617, the court, considering the effect of confirmation in a judicial sale, said: 'The purchaser bids with full notice that the sale to him is subject to

confirmation by the court and that there is a power granted and a duty imposed upon the judicial tribunal when it comes to decide whether or not the sale shall be confirmed to so exercise its judicial power as to secure for the owners of the property the largest practicable returns. He is aware that his rights as a purchaser are subject to the rational exercise of this discretion.'"

The decree appealed from is affirmed, with costs.