MILLER *v.* MILLER.

4-4581

Opinion delivered December 21, 1936.

*Moore, Gray, Burrow & Chowning,* for appellant.
*Kirby Riffel* and *J. A. Watkins,* for appellee.

SMITH, J. On July 15, 1922, Mrs. Geraldine H. Miller, hereinafter referred to as appellee, was indebted to the Union & Mercantile Trust Company in the sum of $16,000, and to secure its payment executed a deed of trust conveying a lot 50 by 140 feet at the corner of West Markham and North Louisiana streets in the city of

Little Rock. The note evidencing this debt was due August 1, 1927. Thereafter the Union & Mercantile Trust Company changed its corporate name to the Union Trust Company.

On August 1, 1930, the time of payment of the note was extended to August 1, 1933, and a renewal note was executed by appellee to the Union Trust Company, agent, in the sum of $16,000. This note, like the first one, bore interest at the rate of six per cent. per annum, payable semi-annually, until maturity, and at the rate of ten per cent. per annum after maturity. Soon after the original loan was made the note which evidenced it was sold to Mrs. Lizzie U. Miller, hereinafter referred to as appellant. The trust company was her agent, and in that capacity collected the interest as it became due on both the original and the renewal notes.

On June 24, 1931, appellee executed a second deed of trust conveying the lot above described to secure an indebtedness of $12,700 due the Union Trust Company. This note was never sold, but was pledged by the trust company to the Reconstruction Finance Corporation.

On December 27, 1933, appellant instituted foreclosure proceedings for the purpose of foreclosing her deed of trust, and on the following day, upon her motion, a receiver was appointed to take charge of the property. Appellee filed no answer in this suit, but an answer was filed by the trust company, which admitted the priority of appellant's lien and prayed that any surplus from the sale of said property under the foreclosure proceedings be paid for credit on its mortgage.

A decree of foreclosure was rendered April 2, 1934, which gave appellant judgment for $16,640, and directed that if this debt were not paid within 150 days the lot be sold by the commissioner appointed for that purpose, the surplus, if any, to be paid to the trust company or the Reconstruction Finance Corporation, as their interests might appear. The debt was not paid within the time limited, and the commissioner published notice that a sale would be had on September 28, 1934. Upon petition of appellee the court ordered the sale postponed until March 22, 1935, and by other orders subsequently

made postponed the sale from March 22, 1935, to September 27, 1935, and from that date to October 4, 1935, and from that date to October 7, 1935. On the date last mentioned, representations were made by appellee and the state bank commissioner, who was then administering the assets of the trust company, which had become insolvent, that negotiations were progressing to refinance the loan. The court ordered a postponement of the sale to March 27, 1936, but recited in this order that "it will be inequitable to further postpone sale beyond March 27, 1936."

On March 17, ten days before the date appointed for the sale, appellee filed a separate suit, making all persons interested parties, in which she alleged that the second mortgage to the Union Trust Company securing the debt of $12,700 had been induced by an agreement that the trust company would pay her $100 per month out of the rents which that instrument authorized the trust company to collect, but that only three such payments had been made, although the rents had been regularly collected by the trust company. An accounting was prayed, with a postponement of the sale for that purpose. Appellant filed a demurrer to this complaint, which the court treated, so far as appellant was concerned, as a motion for further extension of time. The motion, insofar as it affected appellant, was overruled, and the cause was continued as to the other defendants, and the commissioner was directed to make sale on March 27, 1936, as had been previously ordered. The sale was made on the date last mentioned, and appellant became the purchaser upon a bid of $15,000 for the property.

The receiver filed a final report, to which further reference will be made, in which he reported his proceedings. Under the orders of the court, he had kept the property fully insured, and had made the semi-annual payments of interest to appellant which had fallen due. He had paid the taxes, so that there had been no default in the interest payments due appellant nor any delinquency of taxes. He had also made certain repairs and alterations, which operated to increase the rental value

of the property, which then amounted to $420 per month. After these payments had been made, together with the costs of the receivership, there remained in his hands the sum of $1,041.55, which, under the order of the court, he paid over to appellant.

The commissioner filed a report of the sale on April 8, 1936, which was approved that day, as was also the commissioner's deed on the same day. An order finally discharging the receiver was entered April 17, 1936.

When the orders were made approving the report of sale and the deed executed pursuant thereto the court announced that these orders would be set aside if at any time during the April term, then in session, appellee tendered into the registry of the court the amount of appellant's judgment, interest and costs. The order approving the sale recited that the property had sold for a fair and adequate price. This order appears to have been made by consent and in contemplation of all the parties that the debt would be paid pursuant to a plan with which the court and all the parties were familiar before the end of the term of court then in session. However, that finding and the decree of confirmation based thereon was vacated and set aside by the later order made October 3rd at the same term of court, as appears from the original transcript filed by appellant.

A motion was made by appellee, and heard on October 3, 1936, which was the last day of the April term, to set aside the order confirming the sale. At the same time an instrument styled "Waiver" was filed, which recited that appellee submitted to the jurisdiction of the court under the provisions of act 49 of the Acts of 1935, "An act to regulate the foreclosure of mortgages," and had consented to the rendition at any time of any decree found proper by the court regardless of the provisions of that act. The court made an order on this last day of the April term reciting the finding that arrangements had been made to refinance the loan and the sources from which the money for that purpose would be derived, together with the filing of the waiver agreement above mentioned. Appellant saved exceptions to this order and prayed an appeal therefrom, which was

perfected by filing a transcript with the clerk of this court on October 17, 1936.

On October 15, 1936, the court heard testimony on a motion to which we attach but little importance. It did not ask the court to make any additional order, and none was made. Its purpose apparently was to make an order explaining more fully why the court had made the order on October 3, vacating the orders approving the commissioner's report and his deed. The testimony heard at that time has been brought before us on a writ of certiorari, and we are asked to disregard it, as it was in a proceeding had after the appeal to this court had been prayed and granted. This testimony explains why the judgment was not paid on or before October 3, and was to the effect that all arrangements had been completed for making the payment when the attorney representing the Reconstruction Finance Mortgage Company, a Maryland corporation, which is subsidiary to the Reconstruction Finance Corporation, had discovered that the lien of a judgment against the property here involved owned by the receiver personally against appellee had not been released of record, as the receiver had agreed to do. The receiver was at that time in Canada and would not return and did not return until after October 3. Upon his return after that date he did satisfy the record, as he had previously agreed to do, but the attorney could not consent to the payment of the money which the mortgage company had agreed to loan until this had been actually done.

Cases are cited which hold that the trial court is without jurisdiction to further hear a case which has been appealed during the pendency of the appeal. But these cases are not in point here, as the court made no order subsequent to the order from which this appeal comes, except the recital that interest would be abated if a valid tender were refused. Such, however, was the effect of the order of October 3. from which this appeal was prosecuted. It is elementary law that a creditor cannot continue to demand future interest after refusing to accept payment in full of his debt.

The argument relating to the proceedings had on October 15 may be disposed of by saying that the consideration thereof is not essential to the disposition of this appeal. We think it otherwise fully appears that the court had jurisdiction to make the order of October 3 from which appellant appealed, and that no abuse of discretion was shown in making that order. The record of the proceedings contained in the transcript which appellant has filed furnishes ample support for both these conclusions.

The salient facts therein disclosed may be summarized as follows: Appellee has been deprived of the possession of this property and of the rents derived therefrom since the foreclosure suit was filed December 27, 1933, since which time the receiver appointed on appellant's motion has made all collections and disbursements, these disbursements including the payment of taxes and interest. The property has been kept insured and in repair and its rental value increased by repairs and certain alterations. Appellant has been paid the excess above these items amounting to $1,041.55, and she has a deficiency judgment for any balance due her after this $1,041.55 and her bid of $15,000 for the property have been credited on her debt.

There appears to be no question that this valuable business property has been sold for a grossly inadequate price. We know that the receivership continued during the depression, of which we take judicial knowledge. *Martin* v. *Kelley*, 190 Ark. 863, 81 S. W. (2d) 933. Real estate values, both sale and rental, had approximated the nadir. Yet the property has been and is now rented for $420 per month. That fact is as convincing as the testimony of any witness would be upon the question of value. The vigor with which appellant resists appellee's attempt to pay the debt is not without significance.

Appellant insists that she has a vested right to have the sale confirmed, as no attempt was made to show that it was accompanied by fraud or other irregularities, and numerous cases to that effect are cited. Such was the law prior to the enactment of act 21 of the Acts of

1933 and act 49 of the Acts of 1935, *supra*. Section 4 of the Act of 1935 re-enacts verbatim § 4 of act 21 of the Acts of 1933, page 47. That section reads as follows: "Before confirming a sale the court shall ascertain whether or not, on account of economic conditions, or the circumstances attending the sale, a fair price, with reference to the intrinsic value of the property, was obtained. If it is made to appear to the court that a better price could be obtained at a resale, or if any one agrees to bid a substantially higher amount at the resale, the court shall order a resale on such terms as the court may require."

The case of *Martin* v. *Kelley, supra*, declares the effect of this legislation in regard to the confirmation of judicial sales where no showing against confirmation is made except that the property had sold for a grossly inadequate price. It was there said:

"Prior to the passage and approval of act 21 of 1933 the rule in reference to the confirmation and approval of reports of sale in mortgage foreclosures was that the purchaser was entitled to confirmation and approval unless fraud, unfairness or other inequitable conduct was made to appear in effecting the sale. Mere inadequacy of consideration was insufficient to support disapproval of such report of sale unless accompanied by fraud, unfairness or inequitable conduct. (Citing cases.)

"In *Reiman* v. *Rawls*, 188 Ark. 983, 68 S. W. (2d) 470, we expressly sustained the constitutionality of act 21 of 1933, therefore this question need not again be considered.

"By § 4 of act 21 of 1933 the rule, as heretofore stated, has been modified to the extent of allowing the chancery court to ascertain upon presentation of the report of sale the economic conditions attending the sale, and also whether or not a fair price was obtained in respect to the intrinsic value of the property sold. If it is made to appear to the court that a fair price was not obtained at the sale due to economic conditions, and it is also made to appear that a better price may be obtained at a resale, or if any one agrees to bid a substan-

tially higher amount for the property at resale, the court may direct a resale.

"The obvious meaning and effect of § 4 of act 21 of 1933 is that if the property sold does not bring a fair price when its intrinsic value is considered, and it is made to appear that a better price may be obtained at a resale, or if any one agrees to bid a substantially higher amount for the property at resale, then it should be directed to be offered at resale; otherwise not."

It is true in this case that the court did not make the express finding that a better price might be obtained or that a substantially higher bid would be made, nor did the court order the resale of the property, as might have been done under the authority of this act. But we think this omission is not an error of which appellant may complain. Appellant's bid was permitted to stand and she was not required to outbid some competitor at a resale. The order here appealed from will permit her to remain the purchaser notwithstanding the gross inadequacy of her bid unless redemption is made within the time intended by the court for this to be done when the report of sale was confirmed. The record reflects the fact that the sale was confirmed upon the express condition that the debt be not paid before the expiration of the term, and it reflects the fact also that while appellant did not consent to this order she made no objection to it. It is true, of course, that an actual tender was not made before the expiration of the term, but reasons sufficient to satisfy the court were given for a slight additional extension of time for that purpose. As the term of court was about to expire, the court set aside the orders of confirmation, but this was done not to give an indefinite time for payment, but to allow a slight correction in the abstract of the title to be made, which has been made. We think the court had the power to do this, and that it was no abuse of discretion to do so.

In the case of *Martin* v. *Kelley, supra,* where mortgaged property had been sold at a foreclosure sale for a grossly inadequate price, it was held error to refuse to confirm the sale where it did not appear that a better price could be obtained at a resale within a reasonable

time. No such question is presented here. The intention and effect of the order of court made on October 3 was to grant the few additional days' time required for a tender to be made appellant of her debt, this being the condition upon which the court had approved the report of sale the day it was filed together with the deed to the purchaser on the same date.

While the court might have ordered the resale of this property, the failure to do so is not an error of which appellant may complain. The act of 1933, *supra,* conferred upon the court power to refuse confirmation of the sale on account of inadequacy of price, and that, in effect, is what the court did, but this relief was granted upon the condition that the debt be promptly paid, and appellant was permitted to have title to the property without outbidding competitors upon a resale, if the debt was not paid.

We conclude, therefore, that the action of the court below was not in excess of its jurisdiction, nor was there any abuse of discretion, and the decree is, therefore, affirmed.

McHANEY and BUTLER, JJ., dissent.