## COULTER et al. v. BLIEDEN et al.
### In re MORGAN'S ESTATE.
#### No. 11385.

Circuit Court of Appeals, Eighth Circuit.
May 23, 1939.

Rehearing Denied June 19, 1939.

30

Carl F. Jaggers, of Little Rock, Ark. (Neill C. Marsh, Sr., of El Dorado, Ark., on the brief), for appellant M. B. Morgan.

Curtis E. Garner (Kenneth W. Coulter and E. H. Coulter, both of Little Rock, Ark., on the brief) for appellant E. H. Coulter, trustee.

D. D. Panich, of Little Rock, Ark., and Arthur L. Adams, of Jonesboro, Ark., for appellees.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

May 14, 1931, Morgan Utilities, Inc., was adjudicated a bankrupt upon a voluntary petition.

Appellee J. Clyde Lewis, as trustee, operated the assets of this bankrupt. Thereafter, January 8, 1932, four other so-called Morgan Corporations also went into bankruptcy. One S. R. Morgan has been held to be the beneficial party in interest in each of these separate bankrupt corporations. February 13, 1935, he became a bankrupt. Appellant M. B. Morgan is his brother. Thereafter appellee Blieden, as trustee in bankruptcy of the estate of S. R. Morgan, bankrupt, petitioned the district court, in which court the five separate corporate bankruptcies and the estate of S. R. Morgan, bankrupt, were being administered, to consolidate all six bankruptcy proceedings into one consolidated bankruptcy estate. The court granted this petition, with Blieden, Trustee, in charge, as representing the beneficial interest. Thereupon, Lewis, trustee for Morgan Utilities, Inc., bankrupt, delivered the assets in his custody to appellee Blieden, Trustee of the Consolidated Estates, who was by the court directed to dispose of the assets of the bankrupt estates with all practicable expedition. These assets of Morgan Utilities, Inc., consisted of six ice plants, two cotton gins, and a large warehouse, and were scattered in five cities in the State of Arkansas. The properties, exclusive of thirteen delivery trucks, were appraised in the sum of $52,875. June 16, 1938, the referee made an order directing the sale of the assets, prescribing the terms, conditions, time and place. The sale was made by an auctioneer July 1, 1938. Appellant E. H. Coulter, trustee, qualified as a bidder and offered the sum of $43,000 for the assets, less the thirteen delivery trucks, which was received by the auctioneer as the last and highest bid. Immediately the trustee in bankruptcy announced that he was of opinion that the assets did not bring a fair value, and that he would not recommend confirmation. He petitioned for resale, and, in his report, announced that he had received a new offer in the sum of $65,000, which, however, was subsequently withdrawn. Thereafter, the trustee announced another offer, by appellee James through appellee Tooke, his agent, of $55,000 in cash together with a waiver of the profits earned by the properties representing the assets of the bankrupt estate from July 1, through July 19, 1938, which profit was estimated in the amount of $3,600, together, further, with an offer to purchase all manufactured ice on hand on the date of delivery for the sum of $4.00 per ton. This tonnage was estimated at one hundred tons. The bid also included a waiver of approximately $400 in credits, and covered the entire property including the thirteen trucks. The case came before the referee on two motions, that of Coulter, trustee, for confirmation of his purchase at the sale on July 1, 1938, and that of trustee Blieden for resale. The referee overruled the first and granted the second. The district court sustained the referee. At the resale August 3, 1938, no better offer was received than that of appellee James, through C. A. Tooke, his agent. The referee confirmed the sale to James.

Appellant M. B. Morgan claims to hold first mortgage bonds of $100,000 par value, secured by a first deed of trust covering all of the assets of Morgan Utilities, Inc. A claim, based upon these bonds and the deed of trust securing them, was originally filed, and allowed. Thereafter this claim was re-examined, disallowed and expunged. Appellant Morgan thereupon perfected a review of this action of the referee in expunging the claim. This review was still pending before the district court when this hearing was held. It is the claim of appellee that appellant Morgan has permitted this petition for review to lie dormant, and that he is not a creditor secured or unsecured of the estate of Morgan Utilities, Inc., bankrupt. Appellant Morgan alleges that the referee entered the order to sell the assets free of liens without notice to him and while this petition for review was pending. Accordingly, he filed a petition to vacate and stay the orders of sale, alleging that the assets would not sell for enough to pay his lien claim should it finally be allowed. He prayed that the sale of said assets be delayed until the validity of his claim be finally determined to the end that he might have opportunity to bid his claim as part of the purchase price.

August 11, 1938, the referee made an order consolidating the several petitions of appellants Coulter and Morgan to review the several orders of the referee, to which reference has been made, and providing a certificate and record necessary for a review of all the issues raised in said petitions and orders. By stipulation, dated February 11, 1939, the parties agreed that

the district judge "passed upon and in all things confirmed the action of the referee in all matters mentioned and set forth in the said order of consolidation". The order of the district court affirming the referee upon certificate of review pursuant to said order of consolidation and stipulation recites that the court:

"Considered, Ordered, Adjudged, and Decreed that the order of said referee in bankruptcy rejecting and refusing confirmation of the said bid of E. H. Coulter, trustee, in the sum of $43,000.00, and also the order of the said referee in bankruptcy refusing to stay the sale upon petition of said M. B. Morgan and to accept the bid of the said M. B. Morgan, and the findings of fact submitted by the said referee in bankruptcy in support of his said order, be and the same are hereby in all things ratified, affirmed, and approved."

From this order appellants have appealed. M. B. Morgan raises three points for argument: (a) The refusal to stay the sale; (b) denying to him the right to use his bonds in purchasing the property; (c) over-ruling his objections to confirmation of sale to James, and confirming that sale. We shall consider these points first.

Appellant Morgan claims to have a bond claim in the sum of $100,000 secured by mortgage upon all the assets of Morgan Utilities, Inc. This claim, originally allowed, was subsequently reconsidered, disallowed, and expunged. Morgan challenged this ruling of the referee by petition for review which was pending at the time this sale was ordered in June, 1938. The expunging order was entered on March 3, 1938. The alleged lien claim of appellant Morgan exceeds the appraised value of the assets. It was the contention of this appellant that the sale should be delayed until the validity of his lien should be finally determined, in order that he might bid his said alleged claim as part of the purchase price at the sale. It is conceded that, if Morgan prevails in the establishment of his claim, it will be a first lien upon the proceeds of sale, and the only question on this point is whether the referee, under the circumstances, was justified in ordering the sale of the assets free of liens.

"A sale free and clear from liens may be ordered before the validity and priority of the liens have been determined, the controversies being transferred to the funds". 6 Remington on Bankruptcy, Sec. 2579; Van Huffel v. Harkelrode, 284 U.S. 225, 52 S.Ct. 115, 76 L.Ed. 256, 78 A.L.R. 453; Hoffecker v. Smith, 5 Cir., 294 F. 883.

Ordinarily such sale will not be ordered over the objection of a lien holder who may desire to bid and use the ascertained value of his lien in payment of the purchase price. Ibid, sec. 2580. But, while this is good practice and usual, it is not a rule of law, and, in special cases, as where the lien itself is in litigation, it is a matter within the discretion of the court to sell the property and save expense. In re Franklin Brewing Co., 2 Cir., 249 F. 333. The court of bankruptcy in its discretion may sometimes order properties sold free and clear of liens, even though the amount of the recorded mortgages equals or is greater than the value of the property, especially where there is a possibility of the mortgages being held invalid, thus leaving an equity for general creditors. Remington on Bankruptcy, Vol. 6, Section 2583; In re Hout, D.C., 9 F.Supp. 419; In re Keet, D.C., 128 F. 651.

The fact that the appraised value of the property is less than the recorded lien is not decisive, where the incumbrance is questioned. The referee exercises judicial authority and discretion in the determination whether there will be an equity which will add to the assets of the estate. Such discretion and power should not be disturbed unless it is manifest that it has been improvidently exercised. In re National Grain Corporation, 2 Cir., 9 F.2d 802.

In the instant case the alleged Morgan lien has been decided adversely to that appellant; while a petition for review of the referee's order has been filed, the judgment still stands and its effect is in no sense stayed. Quinn v. Gardner et al., 8 Cir., 32 F.2d 772. In his petition to vacate the order to sell the property free and clear of liens appellant Morgan states that he desires to bid his claim as a part of the purchase price of the assets of the bankrupt corporation, with the provision that, if his lien claim is finally disallowed, he be permitted to substitute cash in lieu thereof to the amount of his bid. Such a provision would be contrary to the terms specifically set out in the order and notice of sale, and there was no guaranty that this appellant could or would perform in case a cash deposit were deferred, and ultimately re-

quired as expressly stated in the terms of sale.

This court has held that, where an order for the sale of property requires the sale to be for cash and unconditional, it is error to accept or consider a bid on behalf of the holder of a secured claim which is in litigation, and that considerations governing judicial sales require that the sale be in conformity with the terms of the order of sale. Blanke Mfg. & Supply Co. v. Craig et al., 8 Cir., 287 F. 345.

In view of the fact that Morgan Utilities, Inc. has been in bankruptcy since May 14, 1931, that the litigation incident thereto has resulted in the disallowance of appellant Morgan's alleged lien claim, and in a consolidation with five other bankruptcy cases involving so-called Morgan Corporations, to the end that this litigation may be brought to an end, and that the assets of the bankrupt estates may be distributed to creditors with all desirable expedition, we do not find that sound discretion was abused in denying appellant's motion to stay the sale, and his application for permission to bid the amount of his alleged claim or any part thereof on the sale price of said assets, as prayed.

Appellant Coulter's claim is that "under either the general rule governing judicial sales, or under the established rule in Arkansas, the court abused its discretion and erred in refusing to confirm the sale in this cause to appellant Coulter, and in confirming the sale to appellee James". On this point for his argument, appellant Coulter invokes the general rule governing judicial sales, which is that, in a sale by a master or receiver under an order or decree in equity which contemplates a subsequent report and an order of confirmation, a bidder becomes a purchaser when the officer announces the sale to him. Such a sale will not be set aside for inadequacy of price unless the inadequacy is so great as to shock the conscience. Files v. Brown, 8 Cir., 124 F. 133. This is substantially the general rule in the State of Arkansas, which has been modified, as to foreclosure cases only, by Section 4 of Act 21 of the Laws of 1933, p. 48. Miller v. Miller, 193 Ark. 362, 100 S.W.2d 74. This rule has been somewhat relaxed in bankruptcy cases, with the result of lodging a greater degree of discretion in referee and court, for the purpose of safe-guarding the interests of creditors and estates alike.

By section 70(b) of the Act, 11 U.S.C.A. § 110(b), it is provided that "Real and personal property shall, when practicable, be sold subject to the approval of the court; it shall not be sold otherwise than subject to the approval of the court for less than 75 per centum of its appraised value". This last clause further emphasizes the construction that a sale subject to confirmation, and not absolute, is the normal condition of such sales when so provided in order and notice. By both order and notice this sale was made subject to confirmation. In his discussion of this provision of the Act Mr. Remington says: "In judicial sales, such as are sales by trustees in bankruptcy, the court is the real seller and the trustee is its agent to obtain the highest bid—the sale is not consummated nor does title pass until confirmation.

\*    \*    \*    \*    \*    \*

By the act of confirmation, the sale becomes complete and the title passes.

And it is just as much a judicial sale, where the court simply approves an offer made, as where it first orders a sale and thereafter approves an offer. In execution sales, on the other hand, the court simply has rendered a judgment for money and is then done with the matter. The sheriff is the real seller and title passes at once to the highest bidder. A result of this distinction is that, in execution sales, the purchaser immediately becomes invested with rights which can only be divested by showing that he himself, or his agent, has been guilty of fraud; while in judicial sales, such as trustee's sales in bankruptcy, until confirmation, the so-called purchaser has no such rights, has no title at all—he is simply a preferred bidder waiting for the court to accept his offer, and is subject to the general rules and principles of procedure relating to other judicial sales, excepting in so far as the bankruptcy act is in conflict therewith; and the court may refuse to accept his offer on much weaker grounds than would be required to set aside a sale on execution, where title has already passed". Remington on Bankruptcy, Vol. 6, sec. 2552.

"Being a judicial sale the court may refuse to accept bids and may set aside sales on lesser grounds than in other sales". Ibid. sec. 2553.

In decisions by the courts we find ample support for the foregoing text.

"Where a sale by a trustee is subject to approval of the court, its action thereon is discretionary, and is reviewable only for an abuse of discretion". After confirmation, and the title vested in the purchaser, the sale of course should not be set aside except for reasons for which equity should set aside a sale between individuals. In bankruptcy the chief purpose is the protection of the interest of creditors. In re Wolke Lead Batteries Co., 6 Cir., 294 F. 509.

 "Contract with a bidder at bankruptcy sale only arises after his bid has been accepted and sale to him confirmed". In re Realty Foundation, Inc., 2 Cir., 75 F.2d 286.

The successful bidder in admiralty does not become a purchaser until his bid is accepted by order confirming sale. The East Hampton, 2 Cir., 48 F.2d 542. Until confirmation even an accepted bid makes the bidder no more than one whose proposal has been recommended, and a bidder at a sale of bankrupt property cannot restrict the court's statutory power to confirm or set aside a sale under the provisions of section 70(b) of the Bankruptcy Act. In re Klein's Rapid Shoe Repair Co., Inc., 2 Cir., 54 F.2d 495; Bryant v. Charles L. Stockhausen Co., Inc., 4 Cir., 271 F. 921. While cases may be found announcing an apparently contrary holding, we are satisfied that this construction accords more closely with the purposes and provisions of the Bankruptcy Act.

In Heller v. Lamar et al., 64 App.D.C. 266, 77 F.2d 389, 390, it is held that in chancery cases the contract of sale is never regarded as consummated until ratified by the court, which may consider circumstances showing that the proposed sale would be injurious to parties concerned. In the body of the opinion we find language quite applicable to the case before us:

"The appellant shows no peculiar damage, beyond alleging that he has made the deposit required and is ready to complete the sale, which he says was properly conducted, and where his bid was a fair one.

"But we are of opinion that the history and circumstances of the transaction presented a question for the discretion of the chancellor, and that his decision thereof should not be set aside except for a clear abuse of his power, which certainly does not appear in this case."

It is to be remembered that the trustee, immediately, at the close of the bidding, announced that he did not think an adequate price had been offered, and that he would not recommend confirmation. No intervening damage of any nature has been suffered by appellant Coulter, and by this resale a substantial benefit has accrued to general creditors, no one of whom has challenged the court's decree. If appellant Morgan succeeds in establishing a secured prior claim, he will receive out of the proceeds a fair value of the mortgaged assets. All things considered we do not feel that the trial court abused its discretion in the premises, and its decree accordingly is in all things

Affirmed.