**In re LUSTRON CORP.**
**LA FAYETTE STEEL CO. v. LUSTRON**
**CORP.**

**No. 10212.**

United States Court of Appeals,
Seventh Circuit.

Oct. 23, 1950.

Rehearing Denied Nov. 10, 1950.

Louis M. Mantynband, Sidney R. Zatz, G. Gale Roberson, all of Chicago, Ill., Benjamin H. Schwartz, Cleveland, Ohio, Henry J. Shames, Chicago, Ill., of counsel, for appellant.

Joseph H. Schwartz, Jacob Cohen, Michael Gesas, Leonard Gesas, William S. Collen, Martin J. McNally, Raymond F. Hayes, all of Chicago, Ill., for appellee.

Before KERNER, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

This appeal grows out of the proceedings involved in Nos. 10203 and 10213. Consequently the facts related in our opinion disposing of those two appeals are included in this opinion by way of reference.

After the entry of the restraining order by the bankruptcy court on June 8, 1950, appellant, Lafayette Steel Company, Inc., hereinafter referred to as Lafayette, filed a petition to modify the order to the extent necessary to permit the receiver in the Ohio court to deliver the property for which Lafayette had bid $645,000 at the receiver's sale, to the bidder. Lafayette also made a motion for leave to intervene in the bankruptcy proceedings. The court, on July 6, 1950, holding that Lafayette was not a party in interest and not entitled to intervene, dismissed the petition and denied intervention. From this order, this appeal is taken.

Appellant contends that it is a bonafide purchaser of the property in question at a judicial sale and entitled, as a matter of law, to have the sale confirmed, irrespective of the intervention of bankruptcy, that the institution of bankruptcy did not deprive the Ohio court of jurisdiction to confirm the sale and that it had a right to intervene to obtain modification of the injunction.

Bearing in mind the facts that appear in our opinion in 7 Cir., 184 F.2d 789, we think it clear that the court rightfully denied the petition for modification of the injunction. We have seen that the Ohio proceeding was trifold in character. RFC there sought, first, judgment upon its indebtedness, second, foreclosure of its purported mortgages, and, third, a proceeding in rem, whereby the court took possession of all the assets located in that jurisdiction for the benefit of all creditors, appointed a receiver and gave to him the custody of such assets and all the power of a receiver in equity in insolvency proceedings. We have also seen that general assets "not covered by the mort-

gages" were ordered sold; that these belonged to the general assets and, therefore, to the unsecured creditors in bankruptcy, in case such proceedings should be instituted; that such general assets had been sold to Lafayette, subject to confirmation by the court; that the sale had not been confirmed when the bankruptcy proceedings were instituted; that the bankruptcy court enjoined confirmation of the sale and that the receiver in Ohio, in deference to the injunction, refused to deliver the assets to Lafayette or to accept the unpaid portion of the purchase price.

■ It is well established that where property of the debtor later adjudged a bankrupt is in the hands of an equity receiver in an equity insolvency proceedings, where no lien exists upon the general assets involved antedating bankruptcy by more than four months, the bankruptcy court's jurisdiction over the assets in the hands of a non-bankruptcy receiver is paramount and exclusive. Thus, in Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 261, 79 L. Ed. 599, the court said: "Upon such filing, the jurisdiction of the bankruptcy court becomes paramount and exclusive; and thereafter that court's possession and control of the estate cannot be affected by proceedings in other courts, whether state or federal. (Citing cases.) This applies while the possession is constructive as well as when it becomes actual. (Citing cases.) * * * In the present case, with the supervening bankruptcy, the possession of the state court came to an end, and that of the bankruptcy court immediately attached." And 293 U.S. at page 473, 55 S.Ct. at page 262: "Thereafter, the estate in its entirety was held by the receiver as a mere repository for the bankruptcy court and therefore not adversely;".

■ The law is well stated in In re Diamond's Estate, 6 Cir., 259 F. 70, 73, where the court announced: "Upon the adjudication of bankruptcy, the District Court acquired jurisdiction essentially exclusive to administer the estate of the bankrupts generally, including the determination of claims to or liens upon their property, as well as questions of disbursement and distribution generally. * * * This exclusive jurisdiction the bankruptcy court was not at liberty to surrender * * *; and after bankruptcy supervened the state court (broadly speaking) no longer had power, unless under circumstances of emergency not applicable to the order here, to so dispose of the bankrupts' estate, in whole or in part, as to deprive the bankruptcy court of power to determine finally the propriety of such disposition." This is in accord with Section 69, sub. d of the Bankruptcy Act, U.S.C.A. Title 11, § 109, sub. d which provides that "d. * * * Such receiver or trustee, with knowledge of the filing of such bankruptcy proceeding, shall not make any disbursements or take any action in the administration of such property without first obtaining authorization therefor from the bankruptcy court." After bankruptcy has occurred the bankruptcy court is without power to surrender its paramount and exclusive jurisdiction. Isaacs v. Hobbs Tie and Timber Co., 282 U.S. 734, 739, 51 S.Ct. 270, 75 L.Ed. 645 and United States Fidelity & G. Co. v. Bray, 225 U.S. 205, 32 S.Ct. 620, 56 L.Ed. 1055. See also In re Watts, 190 U.S. 1, 27, 23 S.Ct. 718, 47 L.Ed. 933; Lion Bonding & S. Co. v. Karatz, 262 U.S. 640, 642, 43 S.Ct. 641, 67 L.Ed. 1151 and Moore v. Scott, 9 Cir., 55 F.2d 863, 865, Brennan v. Trimpert Rough Hat Co., D.C., 8 F.Supp. 926. Consequently upon the filing of the petition in bankruptcy, followed by adjudication and election of trustees, the exclusive title vested in those trustees as of the date of the filing of the petition. Thereupon the court in Ohio, in so far as its proceeding affected general assets, lost jurisdiction to proceed and the receiver of that court held those assets subject to the demands of the trustee in bankruptcy. Consequently the court rightfully restrained the confirmation of the sale to Lafayette, for it alone had jurisdiction thereafter to administer and dispose of the general assets of Lustron.

■ What we have said should dispose of the case finally and completely but, perhaps, it is well to consider further some of the contentions of appellant. It insists that at the sale, subject to confirmation by the court, it became a bonafide purchaser at a judicial sale whose title was then perfected

so that no court could thereafter interfere with the same and cites a number of cases holding that in such situation, the purchaser has certain equitable rights, including the right to have the sale confirmed in the absence of fraud, mistake or other circumstances sufficient in law to invalidate the sale or prevent its confirmation. We have no quarrel with the proposition that a purchaser has a right to apply to the court for confirmation and, if the sale is legal and not subject to attack in any manner, have the sale confirmed. But these cases have no relevancy or applicability to a sale of general assets which remains unconfirmed, at the time bankruptcy has intervened. A receiver's sale in an equity insolvency receivership, subject to confirmation, is a judicial sale which is not complete until confirmation. Until that event occurs, even an accepted bid makes of the bidder no more than one whose proposal has been recommended. In bankruptcy, such a bidder before confirmation is not even vested with an equitable title to the property and can not restrict the power of the bankruptcy court under Section 70 of the Act, 11 U.S.C.A. § 110. In other words, while the highest bidder is entitled ordinarily to have his bid accepted, he is not a purchaser and has no title until the sale is confirmed. In re Klein's Rapid Shoe Repair Co., 2 Cir., 54 F.2d 495, and cases there cited, Hartford Accident & Indemnity Co. v. Crow, 6 Cir., 83 F.2d 386, In re Wolke Lead Batteries Co., 6 Cir., 294 F. 509, The East Hampton, 2 Cir., 48 F.2d 542, Heller v. Lamar, 64 App. D.C. 266, 77 F.2d 389, In re Realty Foundation, 2 Cir., 75 F.2d 286, 288.

■ It is of no importance that the Ohio law regarding such sales differs, if that were the fact, for, in view of the paramount character of the bankruptcy jurisdiction, any disposition of general assets contrary to the provisions of the bankruptcy act by another court, state or federal, must fail when it infringes upon that jurisdiction. However, an examination of the authorities discloses that the Ohio law is not at variance with what we have said. Reed v. Radigan, 42 Ohio St. 292, Weir v. Snider Saw Mill Co., 88 Ohio St. 424, 103 N.E. 133, Beaumont v. Herrick, 24 Ohio St. 445, 456,

Howell v. French, 74 Ohio App. 257, 58 N. E.2d 237, Walters v. Homberg, 3 Ohio App. 326. In this connection appellant insists that it had a right, under the law, to have the sale confirmed in the absence of fraud, unfairness or mistake. This proposition is correct so far as it goes but, in view of the jurisdiction in bankruptcy, to that postulate should be added that there must be likewise absence of intervention of a superior jurisdiction, such as bankruptcy.

■ Appellant insists that the assets which it purchased were subject to the lien of the RFC. However, as we have observed, the Ohio proceedings included not only foreclosure of RFC's liens but also a general equity receivership for unincumbered assets, and the receiver appointed by that court found a substantial sum of money on hand and certain assets which he reported to the court were not covered by any mortgage and as to which he asked instructions from the court. Thereupon the court ordered sale of assets "not covered by the mortgages." If RFC ever had a mortgage purporting to cover the assets sold to Lafayette, it certainly waived any such lien in the Ohio proceedings. Those assets were correctly treated by the court as general assets as to which, the Ohio proceeding was a general equity receivership of an insolvent corporation wherein the right to administer the property came to an end as a matter of law upon institution of bankruptcy proceedings.

■ Appellant takes the position that it is protected by Section 67, sub. a(3) of the Bankruptcy Act, U.S.C.A., Title 11, Sec. 107, sub. a(3), where it is provided that if any property affected by any lien is deemed null and void, the property shall pass to the trustee or debtor as the case may be except that the court on due notice, may order such lien to be preserved for the benefit of the estate and direct conveyance of the title, provided, however, that the title of a bona-fide purchaser of such property shall be valid. It insists that the sale of the receiver to it was made in pursuance of satisfaction of a lien. The short answer is, as we have pointed out, that the Ohio receiver's sale was not in pursuance of any lien but a sale

of general assets. Nor did the entry of judgment by the Ohio court or the appointment of a receiver impose, under the Ohio law, a lien in favor of RFC upon the property in the hands of the receiver valid against bankruptcy proceedings as contended by appellant, for that judgment worked no lien valid as against the trustees in bankruptcy. The sale was not made in pursuance of the judgment or to satisfy it but was made pursuant to the court's administration of the general assets of the bankrupt. Even under Ohio law, had the sale been in pursuance of the judgment, there was no lien because of the judgment in the absence of an execution. 2 Throckmorton's Ohio Code Annotated, Section 11656-1; Jackman v. Hallock, 1 Ohio 318, 320; Langel v. Moore, 119 Ohio St. 299, 164 N.E. 118.

The orders of the District Court from which the appeal is taken dismissed the petition for modification of the injunction order and denied appellant's motion to intervene. Perhaps the court might more appropriately have provided that Lafayette might intervene and then dismissed its claim for want of equity. But this, we think, is immaterial, for the essential final effect of the orders is the same as if they had so provided. So far as legal effect is concerned, they were a determination that the facts set up in the petition did not state a valid claim for relief on the part of Lafayette. Therefore, the court dismissed the petition and denied intervention as futile.

The court has a right, of course, in the exercise of its jurisdiction in the administration of the bankruptcy assets to determine whether eventually the sale shall be permanently enjoined or whether it shall be approved and the proceeds of sale delivered to the trustee in bankruptcy; but these are details of administration properly within the function of the District Court. If, in making such determinations, the interests of Lafayette are involved, the District Court will undoubtedly very properly and appropriately permit intervention for the protection of such interests.

The orders are affirmed.