## In re LUSTRON CORP.
## RECONSTRUCTION FINANCE CORP. v. LUSTRON CORP.
### Nos. 10203, 10213.

United States Court of Appeals
Seventh Circuit.
Oct. 23, 1950.

See also 7 Cir., 184 F.2d 798.

Lee Walker, Stephen R. Chummers, Walter Sczudlo, Reconstruction Finance Corporation, all of Chicago, Ill., Frank Harrison, George Cameron, Cleveland, Ohio, James W. Shocknessy, Columbus, Ohio, for appellant.

Michael Gesas, Leonard Gesas, William S. Collen, Martin J. McNally, Raymond F. Hayes, J. H. Schwartz, Jacob Cohen, all of Chicago, Ill., for appellees.

Before KERNER, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

On February 21, 1950, the Reconstruction Finance Corporation filed a complaint in the United States District Court for the Southern District of Ohio, in which it sought, first, judgment upon an alleged indebtedness of Lustron Corporation, Inc., an Illinois corporation, second, foreclosure of alleged liens on property owned by Lustron, third, receivership in equity to marshal and distribute all other assets of Lustron under the direction of the court, on the ground that that corporation was insolvent. The court, on March 6, 1950, having found that the properties and business of Lustron should be cared for and preserved as an entirety, appointed a receiver of all property of whatever kind belonging to it and restrained it and all other persons from interfering with the receiver's possession and from instituting or prosecuting any action at law or in equity against the defendant corporation.

On March 4, 1950, the court entered judgment against Lustron for $36,593,969.93, and on March 30, a decree of foreclosure of numerous mortgages of RFC purporting to cover all the chattel property owned by Lustron on March 6, 1950, and then located on its factory site in Franklin County, Ohio, and, in default of payment of the indebtedness, directed sale of the mortgaged property, without appraisal, by the United States Marshal, subject, however, to confirmation by the court. On May 17, 1950, upon application of the receiver for instructions as to disposition of property in his possession "not covered by the various mortgages to the RFC" the court directed the receiver to sell as a unit, without appraisal, the inventory, including raw steel, goods in process and completed, production and packing material, trucks, supplies and perishable tools, stationery and office supplies, "etc." The marshal advertised the allegedly mortgaged property for sale on June 6, 1950 and, on that date, reported that the highest and best bid was that of RFC in the amount of $6,000,000. The receiver reported his sale of the property not subject to the mortgages on the 6th day of June, 1950, to the Lafayette Steel Company, Inc., subject to confirmation by the court.

In the meantime, after the two sales but before approval of either, on June 8, 1950, certain creditors of Lustron filed in the United States District Court for the Northern District of Illinois, a petition for its adjudication in bankruptcy and, at the same time, a petition for a receiver and a restraining order. They averred that, as to all unincumbered assets, the pending Ohio cause constituted a general insolvency proceeding in equity; that there was then in the hands of the Ohio receiver unincumbered and unapplied cash in excess of $1,500,000, and that, if RFC should attempt to secure application of that amount upon the unsatisfied portion of its judgment, preferential treatment of RFC over other creditors of Lustron by means of legal proceedings in violation of the Bankruptcy Act would result; that the assets sold to Lafayette were unincumbered; that the $645,000, proceeds of sale thereof, if applied toward reduction of RFC's debt, would likewise effectuate an illegal preference to RFC, to the irreparable damage of all other creditors and the bankrupt's estate; that it was necessary, in order properly to protect the bankrupt estate, to conduct examination of officers and associates of RFC and of Lustron in conformity with the provisions of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., in order to determine the true amount of the liabilities and incumbrances of the bankrupt, and to preserve the status quo until proper investigation into all questions could be completed, and that unless restrained the said sales would be approved, to the irreparable injury of the estate.

The Bankruptcy Court, on June 8, 1950, entered a restraining order as prayed, finding the facts to be as averred and restraining RFC, the Ohio receiver and all others from procuring confirmation of either of the sales until the further order of the bankruptcy court. Notice of the order was served upon the receiver and RFC, but despite the restraint, the Ohio court, on June 12, confirmed the sale to RFC of the allegedly incumbered property and that to

Lafayette of the unmortgaged property. However, the receiver refused to complete his sale.

On the same day, June 12, 1950, RFC filed in the bankruptcy court its motion to dissolve the restraining order. On June 23, the receivers in bankruptcy filed their answer to this motion, in which they averred that the alleged liens of RFC were invalid as to the bankrupt estate, in that the mortgages were not in compliance with but in violation of the laws of Illinois and Ohio, did not sufficiently identify the property intended to be incumbered, attempted to create liens upon after-acquired property, and ran for periods of time beyond those permitted by the laws of Ohio; that RFC had wrongfully dominated Lustron in procuring the judgment of foreclosure in the Ohio court, and that the insolvency proceedings were voidable in bankruptcy.

An adjudication in bankruptcy had been entered on June 12, 1950, and the court had thereupon entered an order of reference to the referee, in accord with the Bankruptcy Act. It included in such reference the power to hear and make recommendations upon issues raised by the motion to dissolve the restraining order and the answers thereto. After protracted hearings, the referee approved the election of trustees and denied the motion for dissolution of the restraining order. This action was approved by the District Court. On June 20, 1950, RFC filed a motion to transfer the bankruptcy cause to the District Court for the Southern District of Ohio and this the court denied. RFC appeals from each order.

RFC now contends that the Bankruptcy Court was without jurisdiction to enter the restraining order of June 8, 1950, for the reason that it had no right to interfere with the proceeding to enforce the liens of RFC in the District Court in Ohio and for the further reason that there was no equity for the bankrupt estate in the property mortgaged to RFC. It urges also that the order was invalid because: it was entered without notice, was not set for hearing at a fixed time or at the earliest possible moment, no security was required of the petitioners and the order failed to include sufficient legal reasons for its issuance. It insists that the court erred also in refusing to transfer the bankruptcy cause to Ohio.

■ Under Section 2 of the Bankruptcy Act, the courts of the United States are vested with jurisdiction in bankruptcy to adjudge persons bankrupt, allow and disallow claims, appoint receivers to take charge of the property of the bankrupt, cause the estate to be collected, reduced to money and distributed, determine controversies in relation thereto, enforce obedience to all lawful orders and, by Section 2, sub. a(15), to make such orders, issue such process and enter such judgments in addition to those specifically provided as may be necessary for enforcement of the Act, provided, however, that "an injunction to restrain a court may be issued by the judge only". The proceeding carrying those powers into execution is one in rem, equitable in nature, administered in accord with the general principles and practice of equity, Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1049, though it is not a suit in equity but a statutory proceeding. Columbia Gas & Electric Corp. v. American Fuel & Power Co., 322 U.S. 379, 64 S.Ct. 1068, 88 L.Ed. 1137.

■■ Under Section 70, the trustee in bankruptcy is automatically vested by operation of law with title to all the bankrupt's property as of the date of the filing of the petition. The section expressly provides that this title shall not be affected by prior possession of a receiver or other officers of any court. Under the section, as amended by the Act of March 18, 1950, the trustee is also vested, as of the date of bankruptcy, with all the rights, remedies and powers of a creditor holding a lien thereon, legal or equitable, whether or not such creditor exists, as to all property of the bankrupt, whether or not coming into possession or control of the court.[1] The trustee has the

---

1. The language of the amendment is all inclusive, thus embracing in the terms "legal or equitable," a judgment credi- tor armed with an execution, specifically mentioned in the section prior to the amendment.

right to avoid any transfer which, under any state law, is fraudulent or, for any other reason, voidable as against creditors of the debtor. By Section 60 he is empowered to avoid preferential transfers under the conditions and limitations therein provided. The various provisions of the Act reflect a well coordinated general plan for the accomplishment of equal distribution of the bankrupt's property amongst the bankrupt's creditors. The trustee, as the hand of the court, collects the assets, protects them, and brings them before the court for final distribution; he is trustee for all who have interests, according to those interests. In re Ducker, 6 Cir., 134 F. 43. Once a petition has been filed, the court's exclusive and paramount jurisdiction extends to all the bankrupt's property, except as otherwise provided in the Act, whether within or without the district where the proceedings are commenced. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645. In the position of a lien-holder under legal or equity proceedings, the trustee has all the rights that such a lien creditor would have under the laws of the state in which the property is located. Incumbrances invalid in that state as against a lien-holder must fall under his attack. Mason v. Citizens' Nat. Trust & Savings Bank, 9 Cir., 71 F.2d.246; In re Goodwin Corp., 7 Cir., 87 F.2d 468; Lakeview State Bank v. Jones, 7 Cir., 242 F. 821. If there has been a failure to comply with the state statute, the trustee's duty is to determine what powers, if any, such failure will confer upon a creditor holding a lien. Janney v. Bell, 4 Cir., 111 F.2d 103, Southern Dairies, Inc., v. Banks, 4 Cir., 92 F.2d 282, certiorari denied 302 U.S. 761, 58 S.Ct. 368, 82 L.Ed. 590. Of course, valid liens are not to be disturbed, but the decisive question in each case is whether the lien is valid under state law as against a lien creditor. In re Baumgartner, 7 Cir., 55 F.2d 1041, Crump v. Hill, 5 Cir., 105 F.2d 124.

▮ Thus we know that bankruptcy jurisdiction, vested solely in the federal courts, under the Constitution of the United States, is paramount and exclusive, superseding all insolvency proceedings pending in other courts, state or federal; that the trustee, armed with the rights of a creditor holding a lien, is under duty to investigate all transfers made by the bankrupt with a view to determining whether the property claimed to have been transferred or mortgaged has been validly incumbered as against an execution or other lien creditor; that it is his function to marshal the assets in behalf of all creditors and that, if he fails in his obligations, he is derelict in his duties. Consequently, our question here is whether the trustees of this bankrupt, having asserted that the mortgages being foreclosed in another court are at least in part invalid because of certain defects under the laws of the state where the property is located and because of the various reasons set forth in the proceedings below, were entitled to a restraining order or temporary injunction.

▮ Under Section 2, sub. a(15), as we have observed, the bankruptcy court may enter such orders as may be necessary for enforcement of the Act. The concluding proviso that an injunction to restrain a court may be issued by the judge only, is a clear indication of intention upon the part of Congress that the court of bankruptcy has the right to enjoin all pending insolvency proceedings, in all other courts, in aid of bankruptcy jurisdiction, contrary to the rule ordinarily forbidding restraint of other courts. Section 2, sub. a(15) is so phrased as to provide for broad exercise of power. Jurisdiction to administer the estate, once it has attached, draws to the court power to protect the estate not only against waste or fraud but also against all proceedings impinging upon its function of discovery of assets and equitable administration of the estate. Suits may be enjoined if they hamper bankruptcy, as when there is a basis for fear that they will be used as instruments or devices to render fraud triumphant or to defeat equal treatment of creditors,—the goal of bankruptcy. Steelman v. All Continent Corporation, 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085. Upon the filing of a petition the custody of the bankruptcy court attaches over all property in its actual or constructive possession. A court in which foreclosure proceedings are instituted is without jurisdiction to deal with the lien, except upon consent of the

bankruptcy court. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645. As we have noted, Section 60, sub. b of the Act enjoins the trustee to take action to prevent preferences, whereby the property to which general creditors are entitled passes to favored creditors. Consequently legal or equitable proceedings to create or enforce liens which are invalid will not be allowed to continue after the filing of the petition except by consent of the bankruptcy court. Wagner v. Mt. Carmel Iron Works, 3 Cir., 270 F. 80, New River Coal Land Co. v. Ruffner, 4 Cir., 165 F. 881 (CA-4).

Keeping in mind the trustees' obligations and the power of the bankruptcy court to issue such orders as are necessary to protect its jurisdiction and remembering that it was the contention of the petitioning creditors, and, when elected and qualified, of the trustees, that the liens under foreclosure in Ohio were invalid, at least in part, as against the trustee, it seems clear that, confronted with a sale about to be confirmed by a court whose jurisdiction in part was that of general insolvency proceedings, which would in the nature of things, confirm the sale unless restrained, if the court had failed to enter a restraining order, the rights of the estate would have been irreparably injured. Thus the Supreme Court, in Steelman v. All Continent Corporation, 301 U.S. 278, 57 S.Ct. 705, 706, 81 L.Ed. 1085, said: "The question is one as to the power of a court of bankruptcy, in the situation developed in the record, to enjoin the prosecution of a suit in another federal court upon the ground that the suit, if passed to a decree, may *thwart an inquiry* into frauds charged against the bankrupt, or make relief against them difficult." (Emphasis supplied.) It continued 301 U.S. at page 288, 57 S.Ct. at page 709: "At present our inquiry halts with the discovery of probable cause for preserving the estate from dismemberment or waste through a precipitate decision. If such cause has been made out, we think the court of bankruptcy has been armed with abundant power to *preserve the status quo* until there can be an adequate trial with all the

necessary parties and a judgment on the merits." (Emphasis supplied.) Concerning the exact nature of the relief proper, the court added: "Much of the argument for the respondent (All Continent Corporation) has been directed to a showing that the suit in Pennsylvania is not subject to restraint for defect of jurisdiction, and this for the reason that the res to be affected * * * had not come within the actual or constructive possession of the court of bankruptcy in New Jersey when the suit was begun to remove the cloud upon title. * * * The argument misconceives the grounds upon which the trustee looks to us for aid. The trustee does not challenge the jurisdiction of the federal court in Pennsylvania, if the word jurisdiction be taken in its strict and proper sense. * * * What he seeks is an injunction * * * upon the ground that the suitor is misusing a jurisdiction which by hypothesis exists, and converting it by such misuse into an instrument of wrong." A question similar to the one presented here was before the court in In re Jersey Island Packing Co., 9 Cir., 138 F. 625, 629. There it was said: "All the property of the alleged bankrupt was about to be sold, at the instance of its treasurer, to obtain satisfaction of debts owing to him and his wife, secured by the trust deeds. (The trust deeds antedated the bankruptcy proceedings by more than four months.) These facts evidently came to the knowledge of unsecured creditors but a few days before the proposed sale. They had no time in which to bring the creditors together, or to secure bidders for the property, or otherwise to protect their interests. The sale of the property under the trust deeds would have extinguished the equity of redemption." The court continued: "We are of the opinion that the District Court had jurisdiction to make the restraining order. Of the propriety of that order, assuming that the court had the power to make it, there can be no question." See also In re Conemaugh Coal Mining Corp., D.C.Pa., 18 F.2d 682, 684; Beach v. Macon, Grocery Co., 5 Cir., 116 F. 143; Remington on Bankruptcy, 4th Ed. Sec. 2499, p. 849;

Sec. 2501, p. 851; 6 Am.Juris. (Rev.Ed. 1950), Bankruptcy, Sec. 297, p. 727.

█ We do not intend to imply that if the liens of RFC are valid under the laws of Ohio, the bankrupt estate has any interest in the mortgaged property; in such case, obviously, the bankruptcy court will not interfere with the foreclosure proceedings. But the order is not a final or permanent injunction against the proceeding in Ohio; it is temporary in character and runs only until the further order of the court and, obviously, is intended to maintain the existing status in order to permit the trustees reasonable time and opportunity to investigate all questions as to validity of the liens and to give the court the opportunity to decide whether the trustees shall be directed to intervene in the foreclosure proceedings, in order thereby to set up the invalidity of the liens, or whether other relief shall be granted. When it is remembered that in the suit in Ohio, a judgment in favor of RFC had been entered for $36,000,000 and that other assets, not claimed by RFC to be subject to the mortgages, were in process of being sold for over $600,000, it would seem perfectly manifest that, with the danger of RFC attempting to levy upon the $600,000 received from the sale of unincumbered assets or upon the moneys in the hands of the receiver, in partial satisfaction of the unsatisfied portion of its judgment, action which would result in complete deprivation of the rights of general creditors of the estate in such unincumbered assets, unless restrained, the trustees would have been derelict and the bankruptcy court at fault in failing to maintain the status until it could be determined what if anything is subject to the demands of the general creditors. This is orderly procedure in marshaling assets and promoting the purpose of the Bankruptcy Act to secure for the general creditors ratably all unincumbered assets and to allot to all secured creditors all property upon which they have valid liens.

RFC insists that the trial court erred in refusing to transfer the bankruptcy cause to Ohio. There is no question but that Lustron, an Illinois corporation, having its legal domicile in Illinois, was subject to the jurisdiction of the bankruptcy court in Illinois. See Section 2, sub. a of the Bankruptcy Act, U.S.C.A. Title 11, § 11, sub. a. RFC does not challenge the validity of the bankruptcy proceeding; nor did it oppose the petition for adjudication; it only moved to transfer the cause to the Ohio court. Moreover, it filed its claim for its debt in the bankruptcy court. The Act provides, in Section 2, sub. a(19), U.S.C.A. Title 11, § 11, sub. a(19), that courts of bankruptcy shall have the power to "transfer cases to other courts of bankruptcy". Section 32 more specifically provides that where more than one petition is pending in different courts of bankruptcy, the court first acquiring jurisdiction shall transfer the cause to and it shall be consolidated in the court which can proceed with the matter for the greatest convenience of the parties in interest.

█ Both Remington and Collier take the position that Section 2, sub. a and Section 32 should be read together and that before a transfer can be ordered there must be a petition in bankruptcy on file in the district to which transfer is desired. See 1 Collier, 14 Ed. 1940, 317, and 2 Collier, same edition, 1317, Remington 5th Ed. Vol. I, page 329. General Order 6 in Bankruptcy, 11 U.S.C.A. following section 53, relates only to a situation where two or more petitions are pending and not to one where only one is pending. The First Circuit seems to agree with the text writers. Royal Indemnity Co. v. American Bond & Mortgage Co., 1 Cir., 65 F.2d 455. Persuasive in reasoning, we think, is the decision of the Supreme Court in Royal Indemnity Co. v. American Bond & Mortgage Co., 289 U.S. 165, 53 S.Ct. 551, 77 L.Ed. 1100, and that of the District Court, when considered in connection with the cited Supreme Court's decision, in In re American Bond & Mortgage Co., D.C., 58 F.2d 379. While Section 118 of the Act, U.S.C.A., Title 11, § 518, provides for a transfer of proceedings under Chapter 10 to a district where no petition is pending, the same liberality has not been extended to transfers

of ordinary bankruptcy proceedings. Of course, every U. S. District Court is potentially a bankruptcy court, but under Section 1 of the Act, for all practical purposes, it does not actually become such a court until a petition in bankruptcy has been filed. We conclude, then, that the trial court was without power to transfer the cause to the District Court in Ohio, inasmuch as no petition in bankruptcy was pending there.

If we be wrong in this determination and the court had a right to transfer the cause to Ohio for the convenience of the parties, under Section 1404(a) U.S.C.A., Title 28, then whether the cause should have been removed was a question for the discretion of the district judge. We are not persuaded by anything presented here that there was any abuse of such discretion.

RFC raises procedural objections to the restraining order. It is said that the bankruptcy court did not comply with requirements of Federal Rule of Civil Procedure 65(b), 28 U.S.C.A., as to issuance of the order and extending it. We are inclined to believe that the paramount authority of the bankruptcy court under the Bankruptcy Act is such that the rules which apply to ordinary restraining orders are not applicable to restraints of courts and parties, in aid of the Bankruptcy Act.

But whether that be the correct view or not, we think that the procedural defects, if any, are wholly without significance, for the order, in its essence, is a temporary injunction issued in pursuance of an original restraining order. Obviously there is no error in the entry of an order, issued upon the eve of confirmation of a sale which would deprive the bankruptcy estate of any opportunity to assert the rights of the general creditors, without notice. Clearly, in such situation, where it is sought only to maintain the existing status, no danger can accrue to the lienee other than some delay in reduction to possession of foreclosed assets. As the trustees were bound, in the performance of their duties, to collect assets and, in pursuance thereof, sought the restraining order to preserve the status, if they, as officers of the court, should have been required to file bonds for costs and damages, they would have been unable to perform their statutory obligations.

We conclude that the temporary injunction order must be affirmed. However, the restraint should not be continued indefinitely. The trustees should be afforded reasonable time and opportunity to make their investigation, under the supervision and direction of the court. If they should delay unduly, it may become the court's duty to dissolve the injunction; and if, after investigation, they find the liens of RFC and the sale in satisfaction thereof, valid, then of course the bankruptcy court should dissolve the restraining order as to the foreclosure sale. But there can be no question but that, insofar as the Ohio proceedings constitute insolvency proceedings in a court of equity, all unincumbered assets in the hands of that court's receiver are clearly those of the trustees in bankruptcy and that the Ohio court, upon intervention of bankruptcy, lost all power to proceed in any respect with regard thereto without the consent of the bankruptcy court.

It should be observed further that the injunctional order was modified in certain respects by this court on August 1, 1950. Whether such modification shall continue and if so to what extent, in view of our decision, are questions which we remand to the District Court to be disposed of in its administration of the bankrupt estate. The stay against the trustees included in our order of August 1, was intended to preserve the estate from injury until final determination of these appeals. Whether it shall be extended, continued or set aside are likewise questions within the District Court's functions in its bankruptcy administration.

With these various observations in mind, the modified injunctional order and the order refusing to transfer the cause are affirmed.