In re LUSTRON CORP.

RECONSTRUCTION FINANCE CORP. v. GESAS et al.

No. 10569.

United States Court of Appeals Seventh Circuit.

May 27, 1952.

Rehearing Denied June 19, 1952.

976

Lee Walker, Stephen R. Chummers, Lawrence T. Manning, Chicago, Ill., for appellant.

William S. Collen, Louis I. Kessler, Joseph L. Kadison, J. H. Schwartz, Jacob Cohen, Michael Gesas, Leonard Gesas, Chicago, Ill., for appellees.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

The Reconstruction Finance Corporation appeals from portions of an order of the District Court which confirmed a report of the Referee in Bankruptcy and ordered payment of recommended fees and allowances to attorneys for the petitioning creditors, to a special counsel for the trustees appointed by the court under the provisions of the General Order in Bankruptcy No.

44, and to the attorneys for the bankrupt, Lustron Corporation. Other recommendations for allowances to the receivers and trustees in bankruptcy, and to their general counsel for interim fees and expenses, confirmed by the same order of the District Court are not questioned by RFC, and are not involved in this appeal. Likewise unquestioned here, is the allowance confirmed by the same order of $611.13 for costs and advances paid by the attorneys of the bankrupt.

Consequently the only problems presented on this record arise from the allowance of fees to the attorneys referred to, in the following amounts:

1. To Collen, Kessler and Kadison, and Michael Gesas and Leonard Gesas, attorneys for the petitioning creditors, as a final allowance, the sum of........$25,900

2. To Michael Gesas, special counsel for the trustees, as a final allowance, the sum of ....... 10,000

3. To Schwartz & Cooper, attorneys for the bankrupt, Lustron Corporation, as a final allowance, the sum of........ 38,750

The major part of the legal services for which the questioned allowances were made were rendered by the respective groups of attorneys in proceedings prosecuted in the District Court by the Reconstruction Finance Corporation and the Lafayette Steel Company.

RFC attempted in its proceedings to procure a transfer of the bankruptcy cause to the Southern District of Ohio, Eastern Division, and also to procure the vacation of an injunctive order entered upon the filing of the petition for adjudication. Lafayette Steel Company also attempted to intervene in order to procure a modification of the injunctive order. Being unsuccessful in the District Court, both RFC and the Lafayette Steel Company prosecuted their separate appeals to this court. The first appeal of the RFC sought to reverse the order denying the transfer of the cause to the District Court for the Southern District of Ohio, Eastern Division. In a second appeal it also sought to reverse the order

of the District Court denying its motion to vacate the injunction. The two appeals of RFC were consolidated in this court. We affirmed the orders of the District Court as reported in 184 F.2d 789. The appeal of Lafayette Steel Company likewise sought a reversal of the order of the District Court denying its petition to intervene and for a modification of the restraining order. We again affirmed the order of the District Court as reported in 184 F.2d 798. Separate applications for certiorari were filed by RFC and the Lafayette Steel Company in the United States Supreme Court. The applications were denied in 340 U.S. 946, 71 S.Ct. 531, 95 L.Ed. 682.

The detailed statement of the various steps that had been taken in the bankruptcy proceedings, up to March 16, 1951, when our mandate was filed in the District Court, may be found in our opinions on the former appeals reported in 184 F.2d 789 and 798.

In the consideration of the problems presented by the record now before this court, it will be sufficient to recall the following vital facts.

On February, 21, 1950, RFC filed a complaint against the Lustron Corporation, in the United States District Court for the Southern District of Ohio, Eastern Division. This complaint sought foreclosure of certain chattel mortgages, pledges and assignments executed and delivered by Lustron to secure loans aggregating $37,500,000 made by RFC to Lustron. The complaint likewise sought judgment against Lustron, and receivership in equity to marshal and distribute all assets of Lustron under the direction of the court on the ground that Lustron was insolvent. The Ohio court appointed a receiver of Lustron's assets both mortgaged and unmortgaged. It also entered a judgment against Lustron, and also a foreclosure decree which directed the sale of certain mortgaged property by the United States Marshal for the Ohio district. It also directed that on June 6, 1950, the unmortgaged property of Lustron be sold by the marshal, both sales to be subject to confirmation by the court. On June 6, 1950, pursuant to such order, the mortgaged property was sold to RFC for $6,000,000,

and the unmortgaged property was sold to Lafayette Steel Company for $645,000. Motions to confirm said sales were filed, returnable before the Ohio court on June 9, 1950.

On June 8, 1950, within four months from the filing of the Ohio suit, the petitioning creditors filed in the United States District Court for the Northern District of Illinois, Eastern Division, their petition for adjudication against Lustron. On the same day, petitioning creditors filed petition for a receiver and for an order restraining RFC and the Ohio receiver, from taking further action in Ohio. Such restraining order was entered on June 8, 1950.

The subsequent proceedings and orders of the District Court in Illinois resulted in the former appeals.

As we have said, our mandate to the District Court of Illinois issued March 16, 1951. Thereupon the trustees proceeded vigorously to collect the assets of the Lustron Corporation.

After collecting such assets, through public and private sales of the unmortgaged property, authorized by order of the court, the trustees realized gross proceeds in excess of $1,287,006.41; in addition they obtained from the Ohio receiver, prior to September 6, 1951, cash in the sum of $1,659,885.25, together with accounts receivable and other intangible assets. As of September 6, 1951, the gross receipts of the trustees aggregated $2,875,631.76; their total disbursements amounted to $2,530,265.19, leaving a balance of $345,366.57 on deposit with the American National Bank & Trust Company of Chicago, and with the First National Bank of Chicago.

Included among the disbursements reported is the sum of $2,497,124.79 which the trustees, pursuant to the order of the District Court, invested in United States Treasury Savings bonds in the principal sum of $2,495,000 upon which interest had accrued in the sum of $2,124.79. These bonds are held for the bankrupt estate.

There is also on deposit with the clerk of the United States District Court for the Southern District of Ohio, Eastern Division, the sum of $100,000 in cash belong-

ing to the bankrupt estate, which was deposited pursuant to an order of the Ohio court, which provides that said sum shall be retained by said clerk pending the disposition of any appeal from the turn over order of said court entered on June 11, 1951, and pending the disposition of a motion by John Runyan, et al., theretofore made in said court. The record now before us for consideration shows nothing in regard to an appeal of said turn over order of the United States District Court in Ohio, nor does it show what disposition, if any, has been made by said court in the matter of the Runyan motion.

On September 24, 1951, the attorneys for the petitioning creditors, Michael Gesas, Leonard Gesas, and Collen, Kessler and Kadison, filed their petition for the allowance of fees as such attorneys. Originally the petition sought an interim allowance but on the hearing their allowance was made final. Their first petition contained no detailed itemization of services rendered but did describe with great particularity the various proceedings and motions that had been undertaken and disposed of up to the date of its filing, and stated that "a fair estimate of the time which the case required was in excess of 2300 hours." Subsequently these attorneys filed a detailed statement of services showing a total of 1337 hours which upon hearing was reduced to 1327 hours. They requested an allowance of $50,000.

Michael Gesas, one of the attorneys for the petitioning creditors, was appointed by order of the District Court special counsel for the trustees "to assist their general counsel in the matter of the pending appeals of RFC and Lafayette Steel Company, and for the purpose of assisting said general counsel in the matter of contesting lien claims against the property of the bankrupt corporation, to be paid as thereafter determined and fixed by the Court." His schedule of services as special counsel for the trustees shows a total of 430 hours. He requested an allowance of $17,200 as special counsel for the trustees.

On October 8, 1951, Martin J. McNally and Raymond F. Hayes, as attorneys for the receiver, filed their petition for the allowance of fees as such attorneys. On the same day they filed a similar petition for an allowance for fees as attorneys for the trustees. They requested $3750 as attorneys for the receiver, and $36,250 as attorneys for the trustees.

On November 15, 1951, Schwartz & Cooper, as attorneys for the bankrupt, filed their petition for the allowance of fees as such. Their schedule showed 1549½ hours for which they requested an allowance of $50,000.

RFC objected to the allowances requested by the attorneys for the petitioning creditors, by the special counsel for the trustees, and by the attorneys for the bankrupt corporation. The matters were referred to a referee in bankruptcy, who, on January 10, 1952, filed his report recommending allowances. RFC objected to the referee's report and to the allowances recommended by him. The District Court, on January 24, 1952, entered an order directing payment of the allowances recommended as hereinbefore set down.

On this appeal RFC is seeking a reduction of the allowances made to the attorneys named. It predicates its prayer for relief on the following claims: (1) That the bulk of the services rendered by the representatives of the petitioning creditors and of the bankrupt are not compensable under the Bankruptcy Act; (2) that there was substantial and unnecessary duplication of services, and (3) that the compensation allowed was excessive.

We propose to examine these contentions of appellant in connection with the allowances made to each group of attorneys. We begin with the attorneys for the petitioning creditors and the attorneys for the bankrupt corporation.

■■■ I. It is the position of appellant that the attorneys for the petitioning creditors are entitled to an allowance for such services as had to do with the preparation of the involuntary petition and with securing an order of adjudication thereon. So far as the attorneys for the bankrupt are concerned, RFC claim is that they should be allowed compensation only for aiding the bankrupt in performing the duties imposed

upon it by section 7 of the Bankruptcy Act, 11 U.S.C.A. § 25.

As originally enacted section 64, sub. b (3) of the Bankruptcy Act 11 U.S.C.A. § 104, sub. b(3) provided as follows, with respect to allowances to attorneys for the petitioning creditors and to attorneys for an involuntary bankrupt:

b(3) "The cost of administration including * * * and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases *while performing the duties herein prescribed,* and to the bankrupt in voluntary cases, as the court may allow". 30 Stat. 563.

By amendment of May 27, 1926, 44 Stat. 667, the position of the italicized phrase in the section was changed. It was placed after the words "petitioning creditors." Speaking of this amendment, the Court of Appeals for the Second Circuit said: In re Evenod Perfumer, Inc., 67 F.2d 878–879:

"* * * The purpose in making the change was to put attorneys for bankrupts in involuntary cases on the same basis as attorneys in voluntary cases. * * * What Congress apparently intended was to leave to the bankruptcy court the right to compensate attorneys for bankrupts in voluntary and involuntary proceedings alike. This allowance is for services rendered by them which results in direct benefit to the estate, as where the assets are increased by reason of diligence and co-operation of the bankrupt's attorney."

The section was further amended in 1938 by Act of June 22, 52 Stat. 874, at which time the phrase italicized was totally eliminated from the section.

Consequently the compensation which may be allowed in bankruptcy to the attorneys mentioned in the section rests in the sound discretion of the court.

The record in the case at bar shows that the petition for adjudication herein was filed on June 8, 1950. Lustron, the alleged corporate bankrupt, entered its appearance on June 8, and on that same day a restraining order was entered. On June 10, RFC served its notice of motion to be presented on June 12 for the dissolution of the restraining order. The only attorneys then before the court were those for the petitioning creditors and for the bankrupt, consequently both firms were served with the notice. On June 12, that motion was continued for one day to June 13, 1950.

On June 13, RFC made its motion to transfer the bankruptcy proceedings to the Ohio District Court. This motion was denied on that same day and its denial resulted in the first appeal to this court. The receivers were appointed on the 13th of June, but no counsel was employed by them until June 16, 1950. The receivers were not appointed as trustees until June 30, 1950, the same attorneys were employed by them as trustees on July 5, 1950, over the objection of RFC. The motion of RFC to dissolve the restraining order entered on June 8, 1950, and thereafter extended, was denied on June 27, 1950, and on June 30 the District Court continued the restraining order in full force and effect until the further order of the court.

The attorneys for the petitioning creditors and for the bankrupt corporation represented the only parties in interest prior to June 30, 1950, when the trustees were appointed again over the objection of RFC. We are of the opinion that they should be compensated for their services in opposing the transfer of the proceedings to Ohio, and in procuring and defending the injunctive order of June 8.

Our conviction in this regard is strengthened when we consider the results of their cooperative efforts. As a direct result of their combined efforts, the assets of the estate were enchanced by more than $642,-000. The identical property for which Lafayette Steel Company had bid $645,000 in a sale of unencumbered assets ordered by the Ohio Court, produced in these bankruptcy proceedings the sum of $1,287,006.41. No one questions the referee's estimate that RFC will receive 95% of any dividend that may be declared. In terms of cash that means that RFC itself will receive more than $609,000 from the sum by which the

assets of the estate were enhanced. That sum, as the referee points out, would probably never have been realized had not the attorneys for the petitioning creditors and for the bankrupt cooperated to oppose the transfer of these proceedings and the vacation of the injunctive order of June 8.

Michael Gesas, special counsel for the trustees, was also one of the group representing the petitioning creditors. One of the grounds of objection to the allowance ordered for his services is that he became ill on August 16, 1950, and was incapacitated until November 16, during which period it is claimed the briefs were prepared and filed and the Lafayette and RFC appeals were decided. An examination of the proceedings in the District Court in those appeals will show that, with Mr. Schwartz for the bankrupt, Mr. Gesas carried the burden of opposing RFC's motion to transfer and attempt to vacate the injunction. Moreover, it does appear that even during his indisposition he directed his son in the work of searching for law and conferring on the preparation of briefs.

Moreover, under the order authorizing the employment of Mr. Gesas as special attorney he was to assist "in the matter of contesting lien claims against the property of the bankrupt." The record discloses that he did render such assistance and advised with the general counsel for the trustees concerning the validity of such liens.

We believe under the facts in this record that the legal services rendered by the attorneys for the petitioning creditors, for the bankrupt and by special counsel for the trustees are compensable under section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(1).

■ II. There appears to us to be no justification for the claim that there was unnecessary and costly duplication in the services rendered by the attorneys composing the groups awarded compensation in the order of January 24, 1952. In this connection we have again examined the transcripts of proceedings, and the briefs and arguments filed in the former appeals. The compensated attorneys joined in a common brief in those appeals. There was consequently no duplication of contention or repeated citation of authorities in this court. The transcript of proceedings in the District Court likewise fails to support the contention that there was obnoxious duplication.

■ III. We come now to the contention that the fees allowed to the various attorneys are excessive. In arriving at his recommendation of amounts to be allowed, the referee used $25 per hour as the fair, usual and customary charge for services such as those rendered herein. Appellant itself concedes that such rate of compensation was reasonable, so far as the attorneys for the trustees are concerned. Moreover, the District Court approved the recommendations of the referee and we can find no justification in this record for the contention that, in doing so, he abused his discretion.

This court said, in Irving-Austin Bldg. Corp., 100 F.2d 574, on page 577:

"* * * Where half a score of lawyers are all engaged on the same side (or even where they are opposed) and have been for several months, and arguments have been made in court, who as well as the court knows which lawyer carried the laboring oar, who rendered constructive,—who rendered obstructive services, who in short, did the real work and, finally, who is entitled to substantial compensation? The test of physical presence of counsel and the number of hours actually devoted to 'sitting in court' must yield before the better test of meritorious service of which the court is the best judge."

From our examination of the record we are convinced that the District Court did not abuse its discretion in ordering the payment of the fees recommended by the referee, and the order appealed from is therefore affirmed.