**In the Matter of HAMILTON STEEL PRODUCTS, INC., M.J.D.M. Truck Rentals, Inc., Appellants,**

**v.**

**Nathan YORKE, Trustee in Bankruptcy of the Estate of Hamilton Steel Products, Inc., Appellee.**

**No. 15829.**

United States Court of Appeals Seventh Circuit.

April 10, 1967.

William J. O'Brien, William M. Flaherty, Chicago, Ill., for appellant.

Norman H. Nachman, Chicago, Ill., for appellee, Gerald F. Munitz, Allan G. Sweig, Chicago, Ill., of counsel.

Before KNOCH, FAIRCHILD and CUMMINGS, Circuit Judges.

464

CUMMINGS, Circuit Judge.

Hamilton Steel Products, Inc. ("Hamilton") was an Illinois corporation organized in 1933, with its principal place of business in Chicago, Illinois. It was a manufacturer of garden equipment and children's toys.

On July 8, 1960, M.J.D.M. Truck Rentals, Inc. ("MJDM"), a Pennsylvania corporation with its principal place of business in Glen Mills, Pennsylvania, filed a District Court breach of contract suit against Hamilton, seeking damages for rental of tractors and trailers by MJDM to Hamilton. On June 3, 1964, a jury verdict was rendered in favor of MJDM for $107,587, and judgment was entered on the verdict. Under Rule 62(a) of the Federal Rules of Civil Procedure, all proceedings to enforce the judgment were automatically stayed until June 13, 1964.

On June 23, 1964, Hamilton filed a motion for stay of execution, a motion for judgment notwithstanding the verdict, and a motion for a new trial. On that date, the District Court denied Hamilton's motion for judgment notwithstanding the verdict and took under advisement the motion for a new trial. At the same time, the District Court ordered "execution of judgment stayed until 10 days after ruling on motion for new trial". On January 22, 1965, Hamilton's motion for a new trial was denied upon MJDM's filing a remittitur reducing its judgment to $60,261.

On December 9, 1964, alleging insolvency, Hamilton filed a petition for an arrangement under Chapter XI of the Bankruptcy Act (11 U.S.C. § 701 et seq.), but Hamilton retained possession of its assets and continued the operation of its business. The referee in bankruptcy simultaneously stayed any suits against Hamilton, after finding that Hamilton was then in default in payment of debts aggregating $1,000,000.

On February 19, 1965, Hamilton withdrew its arrangement petition and consented to be adjudged a bankrupt under the Bankruptcy Act (11 U.S.C. § 1 et seq.). On the same date, Nathan Yorke was appointed trustee in bankruptcy.

On February 26, 1965, the bankruptcy trustee was authorized to offer Hamilton's real estate for sale on March 15, 1965. In the order authorizing the sale, the referee directed all persons asserting liens against the real estate to show cause why it should not be sold free of any encumbrances. MJDM was given notice of this order but did not appear at the March 12th hearing on the rule to show cause. However, without notice to the bankruptcy trustee, on that date MJDM filed with the Recorder of Deeds of Cook County, Illinois, a copy of its reduced judgment. The judgment was duly recorded.

Hamilton's real estate was sold on March 16, 1965, in open court for the sum of $327,000 free of all encumbrances. On April 14, 1965, the bankruptcy trustee filed a motion for summary judgment, asking the referee for an order declaring that MJDM's purported lien for $60,261 be declared null and void.

Title and possession of Hamilton's real estate were transferred by the bankruptcy trustee to the purchaser on May 3, 1965. On December 3, 1965, the trustee's motion for summary judgment was sustained by the referee and MJDM's purported judgment lien was declared null and void. The bankruptcy court affirmed the referee's order and this appeal followed.

The sole issue is whether MJDM's judgment became a lien on Hamilton's real estate superior to the bankruptcy trustee's. We agree with the bankruptcy court's conclusion that MJDM's purported lien was null and void.

■■ MJDM first contends that the mortgaging of Hamilton's properties was fraudulent and deceitful. Nothing in this record shows that the mortgages were to avoid paying the judgment obtained by MJDM. The July 17, 1964, mortgage antedated the December 9, 1964, Chapter XI petition by almost five months and therefore was beyond the period prescribed by Sections 60 and 67 of the Bankruptcy Act (11 U.S.C. §§ 96 and 107). The October 15, 1964, mortgage was of course within four months

preceding the Chapter XI petition and therefore may be a voidable preference (*idem*). To avoid being surcharged, it is to be presumed that the bankruptcy trustee, who represents all creditors, will raise any tenable objections to the mortgages in the bankruptcy court.[1] Any improprieties in the mortgages would affect all unsecured creditors equally.

Similarly, there is nothing in this record to show that the Chapter XI petition was filed in bad faith to avoid MJDM's judgment. Instead, the record shows that at the time of filing the Chapter XI petition, Hamilton's debts aggregated $1,000,000, resulting in Hamilton's insolvency.

▮ At the time of these proceedings, Section 70c of the Bankruptcy Act provided as follows (11 U.S.C. § 110(c)):

> "The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

This provision was enacted in 1910 to give the bankruptcy trustee "all the rights of an ideal judicial lien creditor". Lewis v. Manufacturers National Bank of Detroit, 364 U.S. 603, 605, 81 S.Ct. 347, 348, 5 L.Ed.2d 323; 4 Collier on Bankruptcy (14th ed. 1964) pp. 1410–1434.

Under Section 70c, the trustee's rights as an ideal lien creditor vest "at the date of bankruptcy". That date means "the date when the petition was filed".[2] In turn, "petition" is defined as "a document filed in a court of bankruptcy * * initiating a proceeding under this Act".[3] Another provision of the Bankruptcy Act makes it clear that where, as here, a proceeding under Chapter XI is succeeded by bankruptcy, the proceeding shall be conducted "as if a voluntary petition for adjudication in bankruptcy had been filed and a decree of adjudication had been entered on the day when the petition under this chapter [XI] was filed".[4] By virtue of these provisions, the date of bankruptcy in this case was December 9, 1964.

▮ Section 1962 of the Judicial Code provides that every judgment rendered by a District Court within a State shall be a lien on the property in that State as provided by the law of the State (28 U.S.C. § 1962). The necessary reference to the governing Illinois statute provides that a judgment of a court of the United States shall become a lien upon the real estate of the person against whom the judgment is rendered upon filing a copy of the judgment in the office of the county recorder of deeds (Ill.Rev.Stats. 1965, c. 77, § 69a). Under these two provisions, it is clear that MJDM's judgment could not be perfected into a valid lien until it was filed with the Recorder of Deeds of Cook County. That was not done until March 12, 1965, long after the date of bankruptcy.

Under the Bankruptcy Act, the bankruptcy trustee had acquired the status of a lien creditor on December 9, 1964. Since MJDM's judgment did not become a lien until March 12, 1965, that lien is null and void as against the trustee. United States v. Speers, 382 U.S. 266, 275, 86 S.Ct. 411, 15 L.Ed.2d 314; In re Goodwin Corp., 87 F.2d 468, 470 (7th Cir. 1937); In re Lustron Corp., 184 F.2d 789, 794 (7th Cir. 1950), certiorari denied, Lafayette Steel Co. v. Lustron Corp., 340 U.S. 946, 71 S.Ct. 531, 95 L.Ed. 682.

▮ To rebut these authorities MJDM argues that the June 23, 1964, order (entered in the breach of contract action)

---

1. See 11 U.S.C. § 75(a) (8) and 96(b).

2. See Section 1(13) of the Bankruptcy Act (11 U.S.C. § 1(13)).

3. See Section 1(24) of the Bankruptcy Act (11 U.S.C. § 1(24)).

4. See Section 378 of the Bankruptcy Act (11 U.S.C. § 778(2)).

staying execution of the June 3, 1964, judgment in MJDM's favor restrained it from recording that judgment. However, the order merely provided "execution of judgment stayed until 10 days after ruling on motion for new trial". The stay order did not prevent MJDM from recording its judgment. Execution of judgment would result in the transfer of property from Hamilton to MJDM to satisfy its judgment. Recording this judgment would not be execution because it does not result in any transfer of property. Recording would not affect any judgment creditor rights of MJDM against Hamilton; rather it would determine MJDM's position vis-à-vis others with claims on Hamilton's assets. Therefore, the stay of execution did not prevent MJDM from recording, nor could MJDM have reasonably thought so. In Illinois, a judgment lien and execution on a judgment are different things. Reconstruction Finance Corporation v. Maley, 125 F.2d 131, 133 (7th Cir. 1942) recognizes this difference. There the plaintiff recorded a transcript of his judgment in Knox County, Illinois, and this Court observed:

" * * * plaintiff, by the filing of such transcript, acquired a lien upon the debtor's real estate in Knox County. No execution was issued upon such transcript * * * ".[5]

In other words, the creation of a judgment lien and an execution are considered separate incidents.

■ In sum, nothing in the June 23, 1964, stay order prevented MJDM from recording its judgment. Moreover, there was no stay order in effect between June 13, 1964, and June 23, 1964. MJDM has not explained its failure to record its judgment during that interval.

Chapter 77 Illinois Revised Statutes (1965) Section 1 provides that "a judgment shall be a lien * * * only from the time" of recording. MJDM argues that the effect of Section 2 of this Chapter is to make the effective date of its "lien" relate back to June 23, 1964, when the stay of execution was entered by the District Court in the breach of contract suit. Section 2 provides that "[w]hen the party in whose favor a judgment is rendered is restrained * * * from issuing execution or selling thereon, the time he is so restrained or delayed shall not be considered as any part of the time mentioned" in Section 1. We cannot accept MJDM's argument, for Section 2 is a provision which tolls the seven-year statute of limitations on liens and executions (Section 6 of Chapter 77) while a stay of execution is in effect. Section 2 regulates the length of time for which one is entitled to a judgment lien or execution but has nothing to do with the time at which a judgment lien is created. Because Sections 1 and 2 are separate statutory provisions governing the time and manner of creating a judgment lien (Section 1) and the duration thereof (Section 2), MJDM's relation back argument is without merit.

To conclude, the trustee's lien was valid against Hamilton's property as of December 9, 1964. Being perfected thereafter, any lien of MJDM was null and void as against the trustee in bankruptcy. We realize that this means MJDM will be an unsecured creditor. However, its remedy was to have promptly recorded its judgment lien or to have obtained security when the District Court stayed execution of judgment in the breach of contract case against Hamilton. Equitable relief may not be awarded now to afford MJDM a remedy at the expense of other Hamilton creditors.[6]

The judgment of the District Court is affirmed.

5. To the same effect, see In re Lake County Fuel & Supply Co., 70 F.2d 391 (7th Cir. 1934); Holmes v. Fanyo, 326 Ill. App. 624, 63 N.E.2d 249 (2d Dist. 1945).

6. See Restatement of the Law of Judgments § 129.