521 F.2d 1301
 Themis N. ANASTOS and Hugh M. Matchett, etc., Petitioners-Appellants,
v.
M. J. D. M. TRUCK RENTALS, INC., et al., Respondents-Appellees.
Themis N. ANASTOS and Hugh M. Matchett, etc., Petitioners-Appellants,
v.
William J. O'BRIEN, Respondent-Appellee.
M. J. D. M. TRUCK RENTALS, INC., a Pennsylvania Corporation,
and William V.Demaio, Plaintiffs-Appellants,
v.
William J. O'BRIEN, Defendant-Appellee.
M. J. D. M. TRUCK RENTALS, INC., et al., Plaintiffs-Appellees,
v.
William J. O'BRIEN, Defendant-Appellant.
 Nos. 73-2007, 74-1440 to 74-1442.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 9, 1975.
Decided Aug. 26, 1975.
Rehearing and Rehearing En Banc Denied Sept. 23, 1975.
 
 Hugh M. Matchett, Chicago, Ill., for petitioners-appellants.
 Terry F. Moritz, Isham, Lincoln & Beale, Albert H. Beaver, Chicago, Ill., for respondents-appellees.
 Before PELL, STEVENS and TONE, Circuit Judges.
 STEVENS, Circuit Judge.
 
 
 1
 This is a malpractice action brought by a successful plaintiff against its former trial counsel for failing to perfect a judgment lien on the defendant's realty before the defendant commenced bankruptcy proceedings. The jury returned a verdict against the attorney. He appeals, arguing that as a matter of Illinois law the judgment in the underlying case could not have supported an effective lien because there was no time prior to the bankruptcy when the judgment was both final and subject to execution. Since we agree that recording the judgment would not have perfected a lien, the failure to do so breached no duty owed by the attorney to the plaintiff and caused the plaintiff no harm. We therefore reverse without finding it necessary to discuss the other points argued by appellant, the plaintiff's claim that the damage award should have been higher, or the contentions of the petitioners-appellants who sought leave to intervene in order to share in the recovery.
 
 
 2
 William J. O'Brien, the defendant in this malpractice action, represented the plaintiff in an action against Hamilton; that litigation is described in some detail in our opinion in Hamilton Steel Products, Inc. v. Yorke, 376 F.2d 463 (7th Cir. 1967). For present purposes we need repeat only the essential chronology.
 
 
 3
 On June 3, 1964, the district court entered a judgment of $107,587 in favor of plaintiff and against Hamilton; under Rule 62(a), Fed.R.Civ.P., all proceedings to enforce the judgment were automatically stayed for ten days. Within that ten day period, on June 12, 1964, Hamilton filed a motion for a new trial and a motion for a stay of execution.[1] On June 23, 1964 the district court took the motion for a new trial under advisement and granted the stay of execution "until 10 days after ruling on motion for new trial." On January 22, 1965 plaintiff filed a remittitur reducing the judgment to $60,261, and the motion for a new trial was denied. By its terms, the stay of execution expired ten days later.
 
 
 4
 In the meantime, on December 9, 1964 Hamilton had commenced proceedings under the bankruptcy act which in due course resulted in an adjudication of bankruptcy and a sale of Hamilton's real estate. The plaintiff was thereby deprived of substantially the entire benefit of its judgment, a consequence which could have been avoided if a valid lien had been perfected prior to August 9, 1964, a date four months before Hamilton commenced bankruptcy proceedings.[2] The alleged malpractice consists of O'Brien's failure to perfect a lien on Hamilton's real estate prior to August 9, 1964.[3] His actions on behalf of the plaintiff subsequent to that time are not relevant on this appeal since we have already decided that he did not succeed in perfecting a lien which related back to the date of the original judgment.[4]
 
 
 5
 There is no dispute about the fact that O'Brien did not record the plaintiff's judgment until after August 9, 1964. He argues, however, that an earlier recording would not have created a lien on Hamilton's real estate; therefore, he had no professional obligation to record the judgment earlier and, as a matter of law, is not guilty of malpractice.
 
 
 6
 In order to create a lien on real estate in Illinois, a recorded judgment "must possess two qualifications: First, It must be final and for a definite sum; and Second, it must be such a judgment that execution may issue thereon." Noe v. Moutray, 170 Ill. 169, 177, 48 N.E. 709, 712 (1897). See also, City of Chicago v. Hall, 103 Ill. 342, 348 (1882); Lehman v. Cottrell, 298 Ill.App. 434, 440, 19 N.E.2d 111, 114 (1939); R. Kratovil & F. Harrison, Jr., "Enforcement of Judgments Against Real Property," 1951 U. of Ill.L.Forum 1, 2; 1 Black on Judgments § 407 (1902); 2 Freeman on Judgments §§ 929, 930 (1925).
 
 
 7
 The question, then, is whether there was any time prior to August 9, 1964 when plaintiff's judgment was both final and executable.
 
 
 8
 From June 3 to June 13, execution was stayed automatically by virtue of Rule 62(a), and during the period after June 23, execution was stayed by the order of the district court. Plaintiff is correct in pointing out that neither of those stays of execution prevented O'Brien from recording the judgment; but if no valid purpose would have been served by recording the judgment, the failure to do so cannot constitute malpractice. Since any recording while a stay of execution was in effect would not have created a valid lien, our inquiry narrows to the interval between June 13 and June 23 when no stay of execution was in effect.
 
 
 9
 During the period after June 12, 1964, when Hamilton's motion for a new trial was filed, the judgment lacked finality;[5] it did not become final until after the remittitur was filed and the motion for new trial denied on January 22, 1965.
 
 
 10
 Thus, at no time between June 3, 1964, and February 2, 1965, was the judgment against Hamilton both executable and final. It follows that no judgment lien could have arisen at the time of recording had O'Brien recorded the judgment during that period. Nor, under Illinois law, would such a lien, which could first attach on February 2, 1965, have related back to the date of an earlier ineffective recording. In Lehman v. Cottrell, supra, the court explained that when the deficiencies preventing attachment of a judgment lien are removed, the lien arises as of that date, and does not relate back to any earlier time. 298 Ill.App. at 443, 19 N.E.2d 111.[6] See also 1 Black on Judgments § 408, at 644; 2 Freeman on Judgments § 929, at 1957.
 
 
 11
 It follows as a matter of law that O'Brien could not have perfected a lien on Hamilton's real estate prior to the bankruptcy and that the district court erred in failing to grant his motion for a directed verdict.
 
 
 12
 Reversed.
 
 
 
 [1]
 In our prior opinion we incorrectly stated that the motion was filed on June 23, 1964 (see 376 F.2d at 464); the reference to an incorrect date did not affect the disposition of that appeal, but is critical on this appeal
 
 
 [2]
 See 11 U.S.C. § 107(a)(1)
 
 
 [3]
 As we explained in Hamilton Steel Products:
 "Section 1962 of the Judicial Code provides that every judgment rendered by a District Court within a State shall be a lien on the property in that State as provided by the law of the State (28 U.S.C. § 1962). The necessary reference to the governing Illinois statute provides that a judgment of a court of the United States shall become a lien upon the real estate of the person against whom the judgment is rendered upon filing a copy of the judgment in the office of the county recorder of deeds (Ill.Rev.Stats.1965, c. 77, § 69a). Under these two provisions, it is clear that MJDM's judgment could not be perfected into a valid lien until it was filed with the Recorder of Deeds of Cook County. That was not done until March 12, 1965, long after the date of bankruptcy." 376 F.2d at 465.
 
 
 [4]
 In our opinion in Hamilton Steel Products, Inc. v. Yorke, 376 F.2d 463, we noted that since there had been no recording of the judgment prior to December 9, 1964, there was no basis for a conclusion that a subsequent recording might effectively relate back to the date of the original judgment. It is now clear from our examination of the record and the pertinent Illinois authorities that there would have been no relation back of an effective lien even if an earlier recording had been made. In other words, our decision on the prior appeal is supportable for a reason in addition to that upon which we relied in that opinion
 
 
 [5]
 As Professor Moore has explained:
 "If any such motion (including a motion for a new trial under Fed.R.Civ.P. 59(b)) is timely made, the judgment ceases to be final until the motion is disposed of."
 
 
 [9]
 J. Moore, Federal Practice P 110.08(3), at 120-121 (1973). Thus, the June 3 judgment became interlocutory upon the filing of the new trial motion on June 12. An interlocutory order cannot give rise to a judgment lien. 1 Black on Judgments § 408; 2 Freeman on Judgments § 929
 
 
 [6]
 At the time of the decision in Lehman, Illinois law did not require that a judgment be recorded to create a lien against real property of the judgment debtor located in the county of the court rendering the judgment. The recording requirement herein involved was added by the Act of August 9, 1963, Laws 1963, p. 2678, § 1. See S.H.A. ch. 77, § 1, Historical Note (1966). Such a requirement cannot have been intended by the General Assembly to affect the other prerequisites for the creation of a valid judgment lien, however, because the recording of judgments had been required in Illinois since 1889 in order to create a lien on real estate located in counties other than that of the court that returned the judgment. Id. Noe and Lehman, supra, wherein the requirements of finality and executability are discussed, were both decided after this 1889 act. Thus, the 1963 amendment merely expanded the theretofore existing recording requirement to the county of the court rendering the judgment
 It follows that when a judgment lacking one or both of the requirements to create a lien is recorded, and the deficiencies are subsequently remedied, the lien attaches as of this latter date, at the earliest, and does not relate back to the date of recording. In other words, a recording puts third parties on notice as to the possible existence of an encumbrance, but does not create any lien prior to the time that other requirements for such a lien have been satisfied.